Decided 26 March, 1900.

## HENDERSON *v.* HENDERSON.

[48 L. R. A. 766, 60 Pac. 597, 61 Pac. 136.]

DIVORCE—POWER TO MODIFY DECREE AS TO MAINTENANCE.

1. Under Hill's Ann. Laws, § 501, subds. 3 and 5, authorizing the court upon entering a decree of divorce to award against the party at fault an appropriate amount for the maintenance of the other, and section 502, authorizing the court on motion to set aside, alter or modify so much of a divorce decree as may have provided for the maintenance of either party, a divorce is not final nor *res judicata* between the parties as to such matters: *Corder* v. *Speake*, 37 Or. 105, followed.

HUSBAND AND WIFE—SEPARATION AGREEMENT—PUBLIC POLICY.*

2. A contract by which a husband agrees to pay certain moneys to his wife for her support for a stated period, not made for the purpose of securing a separation, but in contemplation of a divorce on account of the misconduct or disability of the husband, and without fault or inducement by the wife, is not void on grounds of public policy.

HUSBAND AND WIFE—MODIFICATION OF SEPARATION AGREEMENT.

3. A decree carrying into effect the terms of an agreement between husband and wife by which the latter is to receive a certain sum per month for her support during her life after a divorce caused by the husband's misconduct, cannot afterward be modified by the court without the consent of both parties thereto.

UNDERTAKING ON APPEAL—EFFECT OF STIPULATION.

4. On appeal from an order dismissing with costs a motion for modification of a decree granting a divorce and alimony, defendant gave a bond to the effect to satisfy the order appealed from so far as affirmed. About the same time a stipulation was filed providing that, in consideration that plaintiff would not file any counter bond, as provided by Hill's Ann. Laws, § 540, in order that she might enforce the decree for alimony pending the appeal, the defendant would pay her a certain sum per month until the appeal was determined, to be applied *pro tanto* in payment of any alimony to which plaintiff should be entitled on the final determination of the suit. *Held*, that the stipulation did not enlarge the scope of the appeal bond, so as to render the surety liable for alimony which accrued against defendant after the appeal was perfected.

From Multnomah : JOHN B. CLELAND, Judge.

This is an application by M. W. Henderson for a modification of a decree of divorce rendered against him and in favor of Ellen Henderson. On February 4, 1894, the plaintiff was granted a divorce from the defendant, and

---

*NOTE.—See 4 L. R. A. 313 for note, Collusive Agreement Between Husband and Wife in Aid of Divorce Proceedings.—REPORTER.

in the decree therefor the defendant, among other things, was required to support and educate the minor child of the parties during his minority, and to pay to plaintiff during the term of her natural life the sum of $150 per month. On January 6, 1897, defendant petitioned the court in which such decree was rendered to modify the same so that he should be required to pay the plaintiff only $75 per month, alleging as reasons therefor that his business and property, and the income therefrom, had so decreased that he was no longer able to meet and pay the sum decreed, or any greater amount than $75 per month ; that the plaintiff did not require, nor did she expend, more than that sum for her support, but had spent the remainder for purposes not beneficial to her. The plaintiff answered that defendant ought to be estopped from setting up that she did not require more than $75 per month of the sum decreed, or that, by reason of adverse fortune, he is now unable to pay more, or to allege any matter whatsoever as a reason for a modification of the decree in the respect prayed for, for the reason that plaintiff and defendant, on or about January 15, 1894, made and entered into a postnuptial agreement settling and adjusting as between themselves their property rights, under and by the terms of which, among other things, the defendant, for himself, his heirs, executors and administrators, in consideration of plaintiff's covenants, did covenant and agree to pay through the First National Bank, of Portland, Oregon, to the plaintiff, or order, the sum of $150 on the fifteenth day of each month thereafter during the term of her natural life; that, as security for the payment of the same for the term of ten years from said date, the defendant agreed to join with the plaintiff in deeding block 22, in McMillen's Addition to the City of East Portland, Oregon, to one Byron Z. Holmes, to be held by him in trust as security

for the payment of said allowance for the term aforesaid; and it was further agreed that, in case the defendant should desire to sell or dispose of said property, then said Holmes was to furnish plaintiff good and sufficient surety for the payment of said allowance for the balance of said term, or invest the proceeds of the sale in a manner satisfactory to the attorneys for plaintiff and himself, and thereafter to hold said new investment as security for the payment of said allowance; that it was mutually agreed between the parties to said agreement that said property was not to be sold or disposed of for less than the amount required to pay the stipulated allowance until the expiration of the ten years; that the plaintiff, in consideration of said covenants and agreements, relinquished all her right and interest in and to the property of defendant, both real and personal, of every name, nature and description whatsoever, and it was therein specially agreed that the defendant would properly clothe, maintain and educate the said minor child of said parties; that said agreement was signed and delivered by the parties thereto, and thereupon, and contemporaneously with the execution thereof, the plaintiff and defendant did duly make, execute and deliver a warranty deed for said block to the said Byron Z. Holmes, who accepted said trust, and thereupon, as a part of the same transaction, Holmes entered into separate contracts with plaintiff and defendant, wherein he agreed to carry out and fulfill all of the covenants and terms of said agreement between plaintiff and defendant, and fully to carry out the trust imposed upon him; that at the time the first agreement referred to was made and entered into between plaintiff and defendant they were husband and wife; that said agreement was made for a valuable consideration, in order to adjust and settle the property rights between them, and to provide for the support and

maintenance of plaintiff and the support and education of the minor child; that the terms of said agreement and the provisions for support therein contained were reasonable and just; that the agreement is in full force and effect, and all the terms and conditions thereof have been fully complied with by plaintiff; that the deed to Holmes was made in pursuance of said agreement, as well as with declarations of trust respecting the property; that thereafter the court rendered the said decree of February 4, 1894; and that the amount of alimony agreed upon between them in the adjustment of their property rights was embodied therein, and that the defendant has complied with the terms of said agreement up to the fifteenth day of September, 1897, but since then has wholly disregarded them.   A demurrer interposed to this defense being overruled, a reply was filed, denying the estoppel only, and further alleging that the tendency of said agreement between the plaintiff and defendant was to interest the defendant in foregoing resistance to the suit of plaintiff against the defendant then pending for a dissolution of the bonds of matrimony between them, and that said agreement is contrary to public policy, and void.   Thereupon a motion was filed by plaintiff for a decree upon the pleadings, which being allowed and the petition dismissed, the defendant appeals.                              Affirmed.

For appellant there was a brief over the name of *Stott, Boise & Stout*, with an oral argument by *Mr. Whitney Lyon Boise.*

For respondent there was a brief over the names of *Charles J. Schnabel* and *Chamberlain & Thomas*, with an oral argument by *Mr. Schnabel* and *Mr. Geo. E. Chamberlain.*

Mr. Chief Justice Wolverton, after stating the facts, delivered the opinion of the court.

We are now to determine whether the facts set up by the answer to the defendant's petition constitute a defense to a modification of the decree in so far as it provides for the maintenance of the divorced wife. The facts relied upon are set forth by way of estoppel to the defendant insisting upon the modification, it being urged that a valid and binding agreement, based upon a sufficient consideration, was entered into by and between the parties, and that, the decree having been given and rendered in pursuance thereof, neither party can now be heard, without the consent of the other, to deny its validity or binding force and effect.

1. It is suggested, but not urged with great confidence, that a decree of divorce whereby provision is made for the maintenance of one party by the other is final; that all matters determined thereby have become *res adjudicata*, and cannot subsequently be questioned or modified. Such decrees are generally regarded as final, unless reservation has been made in the decree for further adjudication and determination, or the statute has made appropriate provision for such further action. No reservation was made by the decree itself in the case at bar, but the statute has made provision to the effect that, whenever a marriage shall be declared void or dissolved, the court shall have power to further decree, among other things, for the recovery of and from the party in fault such an amount of money in gross or in installments as may be just and proper for such party to contribute to the maintenance of the other, and for the appointment of one or more trustees to manage in such manner as the court shall direct any sum of money decreed for the maintenance of the wife, and that at any time after a decree

37 Or.—10.

is given the court or judge thereof, upon the motion of the other party, shall have power to set aside, alter, or modify so much thereof as may provide for the appointment of trustees for the care and custody of the minor children, or their nurture and education, or the maintenance of either party to the suit:   Hill's Ann. Laws, § 501, subdivisions 3, 5; and section 502.   Mr. Justice MOORE, speaking of section 502 (in *Corder* v. *Speake,* 37 Or. 105, 51 Pac. 647), says:   "The statute authorizes the court, upon motion, to set aside, alter, or modify so much of a decree of divorce as relates to the maintenance of either party to the suit."   This language is explicit, and is a rational and just interpretation of the statute ; and, were it not for the contention of counsel that the question was not involved in that case, we should make no further comment.   True, the provisions of the section are somewhat vague, but, when read in *pari materia,* as it should be, with the preceding section, it is manifest that the legislative intendment was to authorize a modification in that particular.   Hill's Ann. Laws, § 501, subd. 1, provides for the care and custody of the minor children ; subdivision 2 for the recovery of the party in fault, and not allowed the care and custody of the children, such an amount of money as may seem proper for such party to contribute towards their nurture and education ; and then follow the provisions to which allusion has already been made, touching the maintenance of the party not in fault, and the appointment of trustees for the management of such sums as shall be decreed for the maintenance of the wife, or the nurture and education of the children committed to her care and custody.   The modification contemplated comprises the subject-matter of these several subdivisions, respecting which the court is empowered to enter its decree in the first instance, and may be tersely enumerated (1) as it respects the appointment of trustees

for the care and custody of the minor children, (2) as it respects the nurture and education thereof, and (3) as it pertains to the maintenance of either party to the suit. This latter provision plainly refers to subdivision 3 of the preceding section, whereby it is provided for the recovery of the party in fault of such an amount of money as may be proper for such party to contribute towards the maintenance of the other, and this comprehends the wife in the case at bar. Such is the construction usually accorded the latter section in the practice, and is, we are convinced, within the legitimate purpose and intendment of the legislature.

The maintenance provided for by statute is an enlargement upon the signification of the term "alimony" as used in the parlance of the common law. Alimony is an allowance which, by order of the court, the husband is compelled to pay the wife from the date he has been legally separated or divorced, for her support and maintenance. This is to be distinguished, in a general sense, from an allowance *pendente lite*, and proceeded from the recognition of the husband's common-law liability to support the wife: 2 Am. & Eng. Enc. Law (2 ed.), 92. But the statute contemplates an allowance out of the wife's estate in favor of the husband also, thereby extending the power to make an allowance in divorce proceedings; and the authority to modify the decree subsequent to the time of its rendition in respect to maintenance exists as well in the one case as the other,—that is to say, whether the allowance is made from the husband's estate for the maintenance of the wife, or *vice versa*. Although the right to have an allowance awarded for maintenance has been extended by the statute to the husband, the same reasons do not exist in support thereof which formerly induced the allowance of alimony proper. His right thereto is merely statutory, and, while her right is now sustained

by the same authority, the statute is, as to her, declarative of that which formerly existed through usage and custom in so much that it had become the unwritten law. At common law the measure of the allowance was determined by the husband's "faculties," and this because of obligations growing out of the marriage relations to support his wife and offspring. But the rule which should regulate the measure of an allowance to the husband must stand upon an entirely different footing. Whatever that may be, it is unnecessary for us to discuss at this time. The more recent legislation has tended strongly to the removal of all disabilities of the wife which do not exist as to the husband, and she may now contract and incur liabilities and responsibilities to the same extent and in the same manner as if she were unmarried : Hill's Ann. Laws, § 2997. While this fact should not detract from the reasons which support an allowance for her benefit, yet it is a strong circumstance tending to the support of her contracts relative to her maintenance made with her husband, who has always been accounted *sui juris*.

2. It is urged that the contract in controversy is against public policy, and void. But this can hardly be said of it when examined in the light of adjudications uniformly adhered to for a long period of time. In *Walker* v. *Walker*, 76 U. S. (9 Wall.) 743, where the validity of a deed of separation between the husband and wife was called in question because it was thought to have been executed contrary to public policy, it was held to be valid, the consideration being apparent, and that it would be enforced in equity if it appeared that it was not made in contemplation of a future possible separation ; but in respect to one which was to occur immediately, or for the continuance of one that had already taken place, especially was it said to be true if the separation was occasioned by the misconduct of the husband, and the provision for the

wife's support was reasonable under the circumstances, and no more than the court would award for her as alimony should she seek such a remedy for her grievances. When the separation exists as a fact, and is not induced or occasioned by the agreement, the consideration for the husband's undertaking to pay alimony is his release from liability for the support of his wife : *Roll* v. *Roll*, 51 Minn. 353 (53 N. W. 716); *Pettit* v. *Pettit*, 107 N. Y. 677, 679 (14 N. E. 500). It may be stated, generally, that any contract or agreement between husband and wife, which, by its terms or effect, is conducive to a relaxation or a severance of the marital ties, is void, as contrary to public policy, and will not be upheld or maintained. But where a separation has been induced, not by collusion, but by the vicious conduct or disability of one of the parties, without inducement or fault of the other, and it has furnished just grounds for legal separation, then a contract looking to a settlement of property rights and the proper maintenance of the one not in fault is in no sense repugnant to public policy : *Randall* v. *Randall*, 37 Mich. 563.

3. In Wisconsin it has been determined, in effect, under a statute authorizing the court from time to time, upon petition of either of the parties, to revise and alter the decree as it may respect alimony or an allowance for the wife and children, that, notwithstanding the parties may have entered into an agreement anterior to the decree touching the amount of such alimony, the terms of which were incorporated in the decree, yet that the court was authorized to subsequently modify the allowance : *Blake* v. *Blake*, 68 Wis. 303 (32 N. W. 48); *Blake* v. *Blake*, 75 Wis. 339 (43 N. W. 144). The strong tendency of adjudications elsewhere, however, establishes a contrary doctrine,—that when parties have agreed between themselves touching the allowance, and the same is reasonable, and such as ought to be granted under the circumstances

and conditions attending the divorce proceedings, having in view the station and capabilities of the parties to respond, and not being contrary to the policy of the law, such an agreement, subject to the approval of the court, is binding upon the parties thereto. In *Calame* v. *Calame*, 25 N. J. Eq. 548, the husband had deserted his wife, and while he was living in a state of willful estrangement from her he offered in writing to turn over to her certain lands, and to pay her a sum of money, which she accepted in writing. The court, in subsequently granting the wife a divorce, further decreed that she was entitled to the lands and money agreed upon. Under the statute of New Jersey, alimony could not be given in gross, nor in a portion of the real estate of the husband. It was held, however, notwithstanding the court could not enforce an agreement as between the parties to live apart, yet that it could and would enforce an agreement, in a proper case, for the payment of the sum intended for separate maintenance according to the stipulations, and this without the intervention of a trustee, although the husband and wife could not ordinarily enter into a binding contract with each other. Mr. Chief Justice BEASLEY, in conluding his opinion, said : "My deduction from these principles and decisions is that it was within the competency of equity to enforce, as a part of the decree of divorce, the agreement made in lieu of alimony between the complainant and defendant. I do not mean, however, that every agreement which is thus made will be supported. The court should undoubtedly look into these arrangements and their surroundings ; but when it appears that the separation of the wife, forming the groundwork of the agreement, was justifiable, and the provision is suitable, to this extent it is, in my judgment, safe to say that the contract should be upheld." In *Stokes* v. *Anderson*, 118 Ind. 533, 552 (21 N. E. 331, 338, 4 L. R. A. 313, 321),

it was said : "It may be that, if an action for divorce is pending, or if, in anticipation of such an action, the parties meet and agree upon the amount of alimony to be allowed to the wife in case a divorce is granted, and the arrangement is just and equitable, and confined strictly to the matter of alimony, it will be sustained. But if the agreement is broader in its terms, and its tendency is to interest the husband in procuring a divorce, or in foregoing resistance to an effort by his wife to that end, then it is contrary to public policy, and is void :" *Everhart* v. *Puckett*, 73 Ind. 409. See, also, *Dutton* v. *Dutton*, 30 Ind. 452.

In *Buck* v. *Buck*, 60 Ill. 241, a decree was granted the wife, reciting, among other things, that the husband was a man of large property ; that, alimony having been settled between the parties upon the basis therein stated, it was accordingly decreed that the husband pay to the wife $12,000, and the further sum of $1,000, the value of certain furniture and silverware, and that he should maintain and educate an adopted child. The case went to the supreme court, and as a ground of reversal it was urged that the alimony allowed by the court was excessive and oppressive. But it was held that the husband, having consented to the provisions of the decree, should have no relief against his own voluntary agreement, the court saying : " Whether the alimony is too high, or whether the court had any lawful authority to make provision for the maintenance of the adopted daughter without the consent of the plaintiff in error, it is not now necessary for us to express an opinion. It was competent for the plaintiff in error to consent to such a decree, and, having done so, it must remain forever binding on him." So, in *Storey* v. *Storey*, 125 Ill. 608 (18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417), it was held that, "while it is true that husband and wife

cannot lawfully enter into an agreement for divorce, yet it is well settled that the amount of alimony which the husband is to pay to the wife, and the terms of the payment, and the length of time during which such payment is to continue, may be all arranged between them by consent." So a decree awarding alimony in gross or out of the husband's realty, based upon the agreement of the parties, even where the statutory provisions do not permit an allowance in that mode, has been upheld and enforced : *Crews* v. *Mooney*, 74 Mo. 26 ; *Russell* v. *Russell*, 4 G. Greene, 26 (61 Am. Dec. 112). As bearing upon the question, see, also, *Owen* v. *Yale*, 75 Mich. 256 (42 N. W. 817) ; *Petersine* v. *Thomas*, 28 Ohio St. 596 ; *Stratton* v. *Stratton*, 77 Me. 373 (52 Am. Rep. 779) ; *Morrison* v. *Morrison*, 49 N. H. 69. We conclude, therefore, in consonance with these latter authorities, that the better rule is that, notwithstanding the court has power and authority to modify its decree of divorce touching the awarding of a sum of money for the maintenance of either the husband or wife by the other subsequent to the entering of the decree, yet, neverthless, they may agree in a proper case touching the amount of such sum and the manner of its payment, subject to the approval of the court as to its validity in good morals and as conformable to public policy, and in further consideration of the status and condition of the parties relating to the question of its fairness and equability of adjustment ; but that, when such an agreement has been approved by the solemn decree of the court, it becomes forever binding, to the same degree and with like effect as ordinary contracts between parties admittedly *sui juris*, and is not subject to revocation or modification, except by the consent of the parties thereto. In this view the decree of the court below must be affirmed, and it is so ordered.

AFFIRMED.

Decided 28 May, 1900.

ON MOTION TO MODIFY MANDATE.

*Messrs. Geo. E. Chamberlain* and *Chas. J. Schnabel*, for the motion.

*Mr. Raleigh Stott, contra.*

PER CURIAM.    4. This is a motion to modify the decree rendered in this court in the above-entitled cause, so that it may be entered against the surety on the undertaking for appeal, not only for the costs and damages, but as well for the sum of $1,800, the amount of alimony which has accrued against the defendant and appellant under the decree of the circuit court since the appeal was perfected.

The facts out of which the controversy arises are substantially as follows : The plaintiff recovered a decree of divorce against the defendant January 3, 1894, and, as a part of the same decree, the defendant was directed to pay her $150 per month alimony.   Subsequently the defendant moved for a modification of this decree, so as to relieve him from the payment of $75 per month of such alimony, which resulted in an order or decree dismissing the motion, and adjudging that the defendant pay the costs attending the same, from which defendant prosecutes his appeal to this court.   In perfecting his appeal defendant gave an undertaking, with Byron Z. Holmes as surety, to the effect that he would satisfy the decree appealed from so far as affirmed.   Subsequent to the time when the appeal was perfected, there accrued against the defendant, and in favor of the plaintiff, the sum of $1,800 alimony under the original decree entered when the divorce was granted ; and the purpose of the motion now made is to have the decree of this court en-

tered against the surety upon the appeal bond for this latter sum, as well as for the costs attending the motion for a modification of such original decree. There was a stipulation filed in the court below about the time the appeal was perfected, which sets forth that "whereas, the undertaking on appeal in said cause provides for a stay of proceedings as well as for an appeal; and, whereas, the plaintiff intends, notwithstanding such appeal, to make and execute a counter bond as provided by Section 540, Hill's Ann. Laws, in order that, nothwithstanding said appeal, she may enforce the original decree for alimony in said cause : Now, therefore, in consideration that the plaintiff will not execute and file any counter bond as provided by said section, it is stipulated and agreed by and between the parties hereto that, pending said appeal, and until the final determination thereof, the defendant will pay to the plaintiff the sum of seventy-five dollars ($75) per month, promptly on the fifteenth day of each month from and after this date, and that execution may issue to enforce the payment of the same if not so paid ; it being understood and agreed, however, that the said sum of seventy-five dollars ($75) per month is not to be deemed or taken as a waiver of any portion of the alimony that may accrue under the terms of the original decree, and the said sum so received is only to be applied *pro tanto* in payment of any alimony to which the plaintiff may be entitled upon the final determination of said suit."

It is claimed for the respondent that this stipulation, taken in connection with the undertaking, shows that it was the purpose of the undertaking to cover the amount of alimony which should accrue under the decree of the circuit court after the date of the perfecting of the appeal to this court. But in this view we cannot concur. The appeal is from the decree of the circuit court dismissing

the motion for a modification of the original decree granting a divorce and alimony. It simply adjudges that the motion be dismissed, and that the plaintiff have and recover of and from the defendant her costs and disbursements therein, which has reference to the costs and disbursements attending the motion for modification. So that the undertaking is not broad enough to comprehend the initial decree of the court granting the divorce and giving alimony to the plaintiff, nor does the stipulation enlarge its scope, the evident purpose of which was to adjust the amount of alimony to be paid while the motion was pending and undecided, not to secure the payment thereof, or any part of it. The surety is therefore not bound for the payment of the accrued alimony by the terms of the undertaking, and the motion to modify the decree of this court will be denied.

Motion Overruled.

Decided 18 June, 1900.