## ASHBY v. GIBBON et al.

No. 4164.

Court of Civil Appeals of Texas. Amarillo.
March 5, 1934.

Tatum & Strong, of Dalhart, for appellant.

B. N. Richards and J. B. Honts, both of Dalhart, for appellees.

MARTIN, Justice.

Appellant sued appellee Robie A. Ashby Gibbon (referred to herein as appellee), joined pro forma by her husband, and alleged, in part and in substance, that prior to November 28, 1929, appellant and appellee were husband and wife and that a divorce suit was then pending and a judgment was, on November 29, 1929, entered dissolving the bonds of matrimony between them. That on the day prior to the entry of this judgment they entered into a contract whereby their property was divided and their property rights settled, and which contract contained the following stipulation:

"It is agreed that the custody of the children, Louise, a girl, and Lawrence, Jr., a boy, both of tender years, shall be awarded to Second Party, subject to visitation of First Party at seasonable times and places, and First Party agrees to contribute to their support the sum of $65.00 per month, which shall be paid by First Party between the 5th and 10th of each and every month to the Clerk of the District Court of Dallam County, who shall transmit same to the Second Party regularly for the use and benefit of said children."

He further alleged that at the time of and prior to the execution of this contract, the appellee and her attorney perpetrated a fraud on him, the exact nature of which will appear in the special issues submitted to the jury, which we hereinafter quote. He further alleged that the judgment of divorce made no reference to the property settlement and contract in question further than to dismiss it from the suit and that the custody of his two minor children was awarded to appellee and that as long as he was financially able he paid the $65 a month provided in said stipulation. He then makes extended allegations to show that the general financial needs of the children was not as much as it was in 1929 and that his financial condition had changed and that he was no longer able to pay the $65 per month, supporting same with specific facts with reference to such matter. He further alleged that his obligation should be based on his financial condition, circumstances, and the conditions as to expenses for the reasonable and necessary support of said minor children and of his station and their station in life and plaintiff's ability to pay same. He further alleged that both he and appellee have married since the date of said divorce and alleged certain matters intended to show that he was entitled to the custody of the children and that appellee was unfit to have their custody. He alleged certain other matters intended to show jurisdiction and that he was being harassed by small suits claiming an enforcement of the contract as written. He further alleged that said contract was against public policy, was vague and indefinite, and was without consideration. His prayer, in part, was:

"That the contract with reference to paying $65.00 per month for the support of said children as alleged herein be held to be void and cancelled, and in the alternative, if said contract be held to be not void and is not cancelled, that same be modified so as to include the provision omitted therefrom as hereinbefore alleged, and that the monthly payments be reduced in accordance therewith, and that a permanent writ of injunction be granted restraining said defendants, their attorneys and agents, from instituting suit upon said contract against the said Lawrence Ashby, and that the judgment of divorce wherein said children were awarded to Robie A. Ashby be modified and changed so as to award the custody of said children to the plaintiff."

The case was submitted to the jury upon seven special issues. The seventh relates to the custody of the minor children and is omitted. The other six are as follows:

"Special Issue No. 1.

"Did the plaintiff, Lawrence Ashby, at the time and before the signing of the contract entered into the 28th day of November, 1929, between himself and Robie A. Ashby, (now Robie A. Ashby Gibbon) request that a provision be placed in the contract to the effect that 'said monthly payments of $65.00 should be reduced in the future in proportion to the ability of the said Lawrence Ashby to pay said amount, should conditions become worse and he not be able to pay said amount'?

"You will answer Yes or No.

"If you answer Special Issue No. 1 'Yes,' you will answer the following issue: but if you answer Special Issue No. 1 'No,' you need not answer the following issue:

"Special Issue No. 2.

"Did B. N. Richards, at the time of the drawing of the said contract represent to the said Lawrence Ashby that it was wholly unnecessary to include said provision in the said contract, 'that if at any time in the future he should be unable to make said payments, he could go into court and have them reduced in proportion to his ability to pay same, in proportion to the expenses reasonable and necessary for the support and maintenance of the minor children mentioned in said contract'?

"You will answer Yes or No.

"If you answer 'Yes' to the Special Issue No. 2 above, you will answer Special Issue No. 3; but if you answer 'No' you need not answer Special Issue No. 3.

"Special Issue No. 3..

"Were said representations, if any, made as a positive assertion of facts?

"You will answer Yes or No.

"If you answer 'No,' you need not answer the following issue, but if you answer 'Yes,' answer the following issue:

"Special Issue No. 4.

"Did the said Lawrence Ashby rely upon said representations, if any?

"You will answer Yes or No.

"If you answer 'No,' you need not answer the following Issue; but if you answer 'Yes,' you will answer the following issue:

"Special Issue No. 5.

"Did the said Lawrence Ashby believe such representations, if any, to be true?

"You will answer Yes or No.

"If you answer 'Yes,' you will answer the following issue; but if you answer 'No,' you need not answer the following issue:

"Special Issue No. 6.

"Would the said Lawrence Ashby have executed the contract if he had known said representations, if any, were made, were not true?

"You will answer Yes or No."

Issues Nos. 1 and 2 were answered "Yes" and issue No. 3 "No." Issues Nos. 4, 5, and 6 remained unanswered, presumably under the court's direction.

Both sides claimed the right to a judgment under the answers of the jury. The court entered judgment for appellee, denying plaintiff any relief.

It will be observed that the hotly contested issue revolved around the matters contained in special issues Nos. 1 and 2.

This case will have to be reversed, and in view of another trial we deem it best to discuss generally some of its many legal phases, whether supported by proper assignments or not.

■ A husband and wife, living apart and in contemplation of an immediate divorce decree, as in this case, may validly make a contract settling their respective property rights, including also a provision for the payment of an agreed sum monthly by the husband for the support of their minor children. Such a contract is not without consideration, nor is it against public policy. Smith v. Blanton (Tex. Civ. App.) 240 S. W. 651; 23 Tex. Jur. pp. 30 and 169; 30 C. J. pp. 1059, 1069, and 1070; Henderson v. Henderson, 37 Or. 141, 60 P. 597, 61 P. 136, 48 L. R. A. 766, 82 Am. St. Rep. 741; Johnson v. Johnson, 206 N. Y. 561, 100 N. E. 408, Ann. Cas. 1914B, 407.

But of such contracts it has been said: "Post nuptial contracts are not favored by the law; they will be enforced when they are just and fair, but it is said they must be such as appeal to the conscience of the court." 23 Tex. Jur., p. 30. See, also, 30 C. J. p. 1057; Link v. Link (Tex. Civ. App.) 63 S.W.(2d) 1045.

■ Since the present case presents equitable grounds for relief, it is not necessary for us to expressly decide whether or not the naked fact of a change in the financial condition of the husband affords to him a legal basis for asking a modification of this contract to pay a monthly sum for the support of his children. We see no reason to doubt, however, that a husband who faces the probability of having his property placed in the hands of a trustee by the court for the support of his minor children may not, to escape such result, make a valid provision of this character, which would not thereafter be subject to modification upon the ground of a subsequent change in his financial condition. See 30 C. J., pp. 1069 and 1070, and Henderson v. Henderson, supra.

■■ In this case the prayer is for a cancellation of the one provision in the separation agreement for the children's support, and in the alternative for its modification. The entire contract was not introduced in evidence, and is not before us. Obviously, a contracting party cannot rescind his obligation in part, keeping its benefits and avoiding its disadvantages, unless such portion is entirely severable from the remainder, so as in effect to constitute two independent contracts.

13 C. J. 619. Moreover, a rescission of the entire contract ordinarily demands a restoration of the status quo of the parties. We judge from the general description of the present contract in the appellant's brief that it is an indivisible contract, and therefore not subject to rescission, except in toto. There is present here no offer to restore the status quo of the parties, and, if the contract is not severable, the prayer for a rescission of the portion under attack is not tenable, and only that for a modification remains. This brings us to the real question in the case, which apparently was submitted and decided upon an entirely erroneous theory, acquiesced in by all parties.

■■■ It will be observed that the entire question was made to depend upon the answer to the questions quoted above. The third was in our opinion immaterial and one of the controlling issues was not submitted, nor was its submission requested. All parties seem to assume that if the fraud alleged was found by the jury to have occurred, a judgment modifying the contract could be entered. This is an incorrect hypothesis. In no event could the contract be changed, unless and until it was found that the contracting parties had actually agreed to a stipulation prior to the execution of the contract in accordance with the contention of appellant. Otherwise expressed, there must have existed a contract of the character claimed by appellant, before he could rectify it. He was not entitled to modify something which never existed. 53 C. J. 25. There was a disputed issue as to this matter. Again, appellant must have believed the alleged fraudulent statement and been induced thereby to execute the contract in order to modify same. Such issues remained unanswered in this case, apparently under the court's instructions, who made the entire case turn on the single question of whether or not the alleged fraudulent representations were made as a "positive assertion of fact." No objections or exceptions of any kind appear to have been made to the court's charge by either side, nor were any special issues requested. The opinion is expressed that the present case was tried by all parties upon an erroneous theory. This we now undertake to demonstrate. Appellant's cause of action has for its basis the existence of an agreement claimed to have been omitted from a written contract and a misrepresentation as to the legal effect of such contract. Can a legal fraud in this character of case be perpetrated only by a representation which amounts to the "positive assertion of a fact"?

We think our Supreme Court has answered this question in the early case of Ramey v. Allison, 64 Tex. 697. We quote from this case:

"Mrs. Allison seeks in her answer to be relieved against her mistake as to the law when she signed the deed of trust. That mistake was superinduced by representations made to her under circumstances, taking into consideration the nature of the legal question involved, which entitle her to protection the same as if the mistake had been as to matters of fact. Her mistake resulted, according to the answer, from the fraudulent and misleading representations made to her as to the state of the law in respect to the vital consideration on which alone she could have been induced to sign the instrument. * * * A contract obtained in such a manner is fraudulently obtained, if the representations were fraudulently made and intended to deceive; if not thus fraudulently conceived and intended, they are not the less misleading and inducing a fatal mistake on the part of the party relying on their correctness. In either case, the contract is not that of a person giving consent to it under circumstances that will render it binding in equity. * * * 'A misrepresentation of a matter of law does not constitute fraud at law, because the law is presumed to be equally within the knowledge of all the parties. Thus, the misrepresentation of the legal effects of a written agreement which a party signs with a full knowledge of its contents is not a sufficient ground at law for avoiding the agreement. But if a man dealing with another misleads him, and takes advantage of his ignorance respecting his legal position and rights, though there may be no legal fraud, the case may come within the jurisdiction exercised by courts of equity to prevent imposition.' Kerr on Fraud and M., p. 90. A misrepresentation as to the legal effect of an instrument may be fraudulent. Colter v. Morgan, 12 B. Mon. [Ky.] 278; and see Townsend v. Cowles, 31 Ala. 428; Drew v. Clarke, Cooke (Tenn.) 374 [5 Am. Dec. 698]; Broadwell v. Broadwell, 1 Gilman [Ill.] 599."

See, also, the case of Ferguson v. Mounts (Tex. Civ. App.) 281 S. W. 616, and numerous authorities there cited.

Again it has been said: "One is not permitted to accept a promise which he knows that the other party understands in a different sense from that in which he understands it" and "equity sometimes rectifies the contract so as to make it express the real intention." 13 C. J. 375. See, also, Lapish v.

Wells, 6 Me. (6 Greenl.) 175; Hudson Structural Steel Co. v. Smith & Rumery Co. et al., 110 Me. 123, 85 A. 384, 43 L. R. A. (N. S.) 654. These are quoted and cited only to show generally the reasoning in cases involving somewhat similar facts.

We quote further from 53 C. J. 935: "If an instrument fails by reason of misapprehension as to its legal effect to effectuate or conform to the agreement made, relief will be granted, even though its contents are known to both parties." All these legal principles are at variance with the theory that appellant can recover only if the alleged fraudulent representations amount to a "positive assertion of a fact," and will, we think, sufficiently illustrate the real issue for determination. We suggest that appellant should more specifically allege the existence of an agreement covering the matters now claimed to have been omitted.

To all that part of the appellant's petition purporting to set out in detail his changed financial condition and showing his inability to pay the $65 per month, the trial court sustained special exceptions. This was error. These allegations were part of the appellant's case necessary to allege and prove in order to secure a reformation of the contract. They were intended to show that the instrument expressed something which made it inequitable and unjust to enforce. Link v. Link (Tex. Civ. App.) 63 S.W.(2d) 1045. Manifestly a court of equity will not concern itself with an empty legal right that no injury has or could grow out of. 53 C. J. 924; 30 C. J. 1060. The court evidently had in mind that this contract could not be modified upon the naked fact alone that appellant's financial condition had changed. As before indicated, this question is not before us. Its proper solution has already been indicated, but before the trial court or this could intelligently pass on this question, we would have to have the entire contract with all the surrounding facts and circumstances in the record.

We overrule appellee's assignment that the Ashby children were necessary parties to this suit. Smith v. Blanton (Tex. Civ. App.) 240 S. W. 651.

Nor do we think there is any merit in appellant's assignment that the contract in question is not enforceable because it fails to fix a definite time for its duration. The inherent nature of the contract in question is such as that it must necessarily be limited in its duration by the happening of any one of several contingencies. 10 Tex. Jur. 339. For example, the jurisdiction of the trial court over the custody of these children was a continuing one. A transfer of their custody, their death, and the death of appellee are some of the contingencies that made the contract inherently one of uncertain duration.

We regard the testimony as clearly raising an issue that appellant did not rely on and was not induced to sign the contract in question by reason of the alleged misrepresentations and therefore the court properly overruled appellant's motion for a judgment. This in addition to other reasons heretofore given.

The judgment is reversed and cause remanded.