Submitted on briefs at Pendleton May 4, reversed June 16, rehearing denied October 23, 1925.

## W. T. PHY v. WINNIFRED W. PHY.

(236 Pac. 751; 240 Pac. 237.)

**Divorce—"Maintenance" and "Permanent Alimony" are Synonymous Terms.**

1. "Maintenance" and "permanent alimony" are synonymous terms, and constitute an allowance in money to be recovered from the one in fault for support of innocent party.

**Divorce—Burden on Divorced Wife to Overcome Fact of Remarriage as Respects Application to Modify Decree Awarding Alimony.**

2. Though remarriage of divorced wife does not *ipso facto* terminate former husband's obligation to pay alimony decreed, where application is regularly made to modify decree awarding alimony, and marriage of divorced wife is shown, burden of showing circumstances to overcome fact of marriage, is placed on divorced wife.

**Divorce—Decree Awarding Wife Maintenance Regarded as Final, Where Arising from Consideration of Restitution of Property Brought to Husband by Wife.**

3. When allowance of alimony or maintenance arises from consideration of restitution of property brought to husband by wife, decree awarding such maintenance is regarded as final adjudication of matter.

---

2. See 1 R. C. L. 950.

**Divorce—Divorced Wife, Remarrying One Able to Support Her, Waives Right to Claim Support from Former Husband.**

4. Where divorced wife, awarded alimony, remarried, it not being contended that she ever brought any property into estate of her former husband, or that award of alimony was based on relinquishment of any property rights, but it being admitted that her present husband was amply supporting her, *held* that wife by remarriage waived legal right to claim support from former husband, and under Section 514, Or. L., court. was empowered to modify decree so as to fit situation.

## ON PETITION FOR REHEARING.

**Divorce—Decree for Alimony is Subject to Modification.**

5. Under Sections 511, 513, 514, Or. L., a decree for alimony is subject to modification by the court in which it was entered, according to the varying circumstances of the parties.

**Divorce—Words in Stipulation of Parties Relating to "Alimony" are to be Given Their Ordinary Meaning.**

6. Words in stipulation of parties relating to payment of alimony, and upon which the court based its decree awarding alimony, are to be given their ordinary meaning; "alimony" being the allowance which the husband is compelled to pay for his wife's maintenance while she is living apart from him or after she has been divorced.

**Divorce—Right of Alimony Rests upon Relation of Parties.**

7. The right of alimony rests upon the relation of the parties.

**Divorce—When Wife Remarries, New Husband has Duty of Furnishing Her Maintenance.**

8. While it is the duty of the husband to support his wife, nevertheless when the wife marries another man it becomes duty of latter to furnish her maintenance.

**Divorce—Award of "Alimony," Made by Decree, is not Debt Due Wife, but Constitutes Maintenance Prescribed and Defined by Law.**

9. Award of "alimony," made by decree, is not a debt due wife, but constitutes maintenance prescribed and defined by law.

**Divorce—Designated Property, Awarded to Wife in Alimony Stipulation, Went to Her Forever.**

10. Designated property, awarded to wife in alimony stipulation, went to her forever.

**Divorce—Divorced Husband · Held Entitled to Discontinance of Alimony Awarded on Stipulation of Parties, upon Wife's Remarriage to Another Man.**

11. Where a stipulation, on which a decree awarding alimony was based, provided that, in the event a divorce was granted, the

5.  See 1 R. C. L. 946.
11.  See 1 R. C. L. 947.

stipulation should constitute a property settlement and settlement of alimony, but did not show that the alimony awarded was based on property rights of the wife, and did not determine the amount of alimony, but merely recited the maximum amount payable and limited period of payment, *held* that, on wife's remarriage to another man, the divorced husband was entitled to a discontinuance of payment of further alimony.

See (1) 19 **C. J.** 202.   (2) 19 **C. J.** 276, 324 (1926 Anno).   (3) 19 **C. J.** 276.   (4) 19 **C. J.** 276.

From Union: J. W. Knowles, Judge.

In Banc.

This is an appeal from an order denying a motion to modify the divorce decree granted to Winnifred W. Phy on October 16, 1922, by the Circuit Court of Union County, in a suit originally brought against her by her husband, W. T. Phy.

On August 31, 1922, and during the course of their litigation, the plaintiff and defendant entered into a property settlement, wherein it was provided:

"That this agreement is a property settlement and alimony, shall be taken as a full and complete settlement of all property interests and alimony between the parties and neither party hereto shall be compelled to pay, nor either party hereto can recover, any more property or alimony than is as herein set out. And such property settlement and agreement of alimony shall be in full for all property rights, costs, attorney's fees, and alimony, in any suit whatsoever."

It appears from the contract that, by way of settlement the plaintiff agreed to transfer to the defendant 170 shares of stock in Hot Lake Sanatorium and to deliver to her a Chickering Baby Grand piano. He likewise promised to pay alimony as follows:

"Five hundred dollars on or before the fifth day of September, 1922, and $500 on or before the fifth

day of October, 1922, and $100 on or before the fifth day of each and every month thereafter for a period not to exceed sixty-five months; which said payment shall not exceed an aggregate sum of $7,500; which payment of alimony shall be in lieu of all other alimony heretofore ordered by said court; provided, however, that all payments made prior to the first day of September, 1922, shall not be considered as a part of said alimony as set forth in this agreement.''

On the trial of the cause the court, basing its decision upon its findings of fact and conclusions of law therein entered, granted a decree of divorce to Winnifred W. Phy upon her cross-complaint, and made a part of the decree the stipulation referred to above.

Thereafter, on the twelfth day of April, 1924, W. T. Phy, the divorced husband, filed a motion to modify the decree in so far as it related to alimony, and prayed an order of the court that such alimony be discontinued for the reason that Winnifred W. Phy had remarried. The court denied the motion, and Phy appeals to this court.

REVERSED.

For appellant there was a brief over the name of *Messrs. Cochran & Eberhard.*

For respondent there was a brief over the names of *Mr. W. F. Magill* and *Mr. Milton R. Klepper.*

BROWN, J.—This case involves the right of a divorced wife who has remarried to continue to collect alimony from her former husband as provided in the decree of divorce.

''Alimony is an allowance for support, which is made upon considerations of equity and public

policy. It is not property of the wife recoverable as debt, damages, or penalty. It is based upon the obligation, growing out of the marriage relation, that the husband must support his wife—an obligation which continues even after a legal separation without her fault." 2 Schouler, Marriage, Divorce, Separation and Domestic Relations (6 ed.), § 1754.

1. This court has held that maintenance and permanent alimony are synonymous terms and constitute an allowance in money, to be recovered from the one in fault for the support of the innocent party: *Huffman* v. *Huffman,* 47 Or. 610 (86 Pac. 593, 114 Am. St. Rep. 943).

"The remarriage of a divorced wife cuts off her right to alimony from the date of her remarriage, and alimony may be reduced to a nominal sum where the wife has remarried with a man able to support her, or retained only at a sum sufficient for support of the minor children." 2 Schouler, Marriage, Divorce, Separation and Domestic Relations (6 ed.), § 1834.

In 19 C. J. 275, 276, the editors announce the doctrine that, while a divorced wife's remarriage to another does not *ipso facto* release the former husband's obligation to pay alimony, it affords a cogent reason for the court to modify or vacate a decree awarding alimony, "especially where the wife marries a man who is able to afford her a reasonable support; and the rule applies to a decree based upon and incorporating an agreement between the parties, as well as to one founded on testimony."

The effect of remarriage of the wife upon an allowance of alimony is treated as follows in 1 R. C. L., p. 950:

"Aside from its positive unseemliness, it is illogical and unreasonable that she (the divorced

wife) should have the equivalent of an obligation for support by way of alimony from a former husband, and an obligation from a present husband for an adequate support at the same time. It is her privilege to abandon the provision made by decree of the court for her support under sanctions of the law, for another provision for maintenance which she would obtain by a second marriage, and when she has done so the law will require her to abide by her election as there is no reason why she should not do so.''

See 30 A. L. R., p. 79, note; 11 Ann. Cas. 523, note; *Carlton* v. *Carlton*, 87 Fla. 460 (100 South. 745).

2. It is a general rule that the remarriage of a divorced wife does not of itself terminate the former husband's obligation to pay the alimony decreed: *Brandt* v. *Brandt*, 40 Or. 477 (67 Pac. 508); *McGill* v. *McGill*, 101 Kan. 324 (166 Pac. 501); *Hartigan* v. *Hartigan*, 142 Minn. 274 (171 N. W. 925); *Nelson* v. *Nelson*, 282 Mo. 412 (221 S. W. 1066); 1 R. C. L., p. 950. But, when an application is regularly made to modify the decree awarding alimony and the marriage of the divorced wife is shown, the burden of showing the circumstances to overcome the fact of marriage is placed upon the divorced wife: *Brandt* v. *Brandt, supra; Cohen* v. *Cohen*, 150 Cal. 99 (88 Pac. 267, 11 Ann. Cas. 520); *Southworth* v. *Treadwell*, 168 Mass. 511 (47 N. E. 93).

3. When the allowance for alimony or maintenance arises from a consideration of the restitution of property brought to the husband by the wife, the decree awarding such maintenance should be regarded as a final adjudication of the matter. But, as said by Mr. Justice WOLVERTON in speaking for

this court in *Brandt* v. *Brandt,* 40 Or. 477, 486 (67 Pac. 508, 510):

"Where it is made as a matter of support and maintenance merely, then the changed condition of the parties, as where the faculties of the husband have diminished, or the divorced wife has acquired other facilities or means of support, will warrant such a revision or modification, diminishing or cutting off the allowance *in toto,* as may seem reasonable and proper (citing numerous authorities). * * The remarriage of the wife is a persuasive circumstance, calling for an exercise of the court's discretion and authority to modify or rebate the allowance." See, also, 19 C. J. 276.

The case of *Henderson* v. *Henderson,* 37 Or. 141 (60 Pac. 597, 61 Pac. 136, 82 Am. St. Rep. 741, 48 L. R. A. 766), is relied upon by defendant in support of the ruling of the lower court. But that case is not based upon a like set of facts. The decree of the court required M. W. Henderson, defendant, to support and maintain the minor child of the marriage during his minority, and to pay to the plaintiff during the term of her natural life $150 per month. Thereafter, the defendant, basing his petition upon his inability to pay a greater sum than $75 per month, asked the court to modify the decree so as to reduce the alimony to that amount. The plaintiff, answering, averred that the defendant ought to be estopped because the parties had entered into a postnuptial agreement adjusting their property rights, under the terms of which the defendant had, for himself, his heirs, executors and administrators, in consideration of plaintiff's covenant, agreed to pay to plaintiff the sum of $150 on the fifteenth day of each month during the term of her natural life, and that, as security for

such monthly payments, the defendant and plaintiff had joined in deeding to one Byron Z. Holmes, Block 22 in McMillan's Addition to East Portland, Oregon, to be held by him in trust for such purpose. She further asserted that in consideration of the above covenants and agreements she had relinquished all her right and interest in and to the property of the defendant, both real and personal. She averred that she had carried out the terms of her contract by executing the deed. She further averred and proved that this agreement had been made for a valuable consideration and in order to adjust and settle the property rights between the parties. Mr. Justice WOLVERTON, in rendering the decision for the court, held that a decree carrying into effect the provisions of an agreement entered into between a husband and wife, by which the wife, in consideration of releasing all interest in certain real and personal property, is to receive $150 per month for her support during her life after divorce caused by the husband's misconduct, cannot afterward be modified by the court without the consent of both parties thereto.

The case of *Southworth* v. *Treadwell, supra,* is in point. In that case the wife was granted a divorce on June 5, 1890, on the ground of desertion. The parties agreed that alimony at the rate of $150 per month should be allowed the wife, and on June 21, 1890, a written agreement to this effect was adopted as the order of the court, to be embodied in the decree absolute when such decree, if any, should be entered. On March 3, 1891, the divorce was made absolute. Upon the hearing of the husband's petition to vacate the decree awarding ali-

mony, the divorced wife requested a ruling of the
court that the alimony constituted a vested right
which the court had no power to disturb, and that,
before the petition could be maintained it was neces-
sary to show that by her remarriage the financial
condition of the wife was so improved that she
no longer required the alimony. The court declined
to make the requested ruling, and held that the
remarriage of the divorced wife was *prima facie*
cause for the reduction of alimony to a nominal
sum. The case was appealed to the Supreme Court
of Massachusetts, where it was held that the re-
marriage of the wife brought about a material
change in her circumstances, in that it gave her
the right to be supported by another man. The
court further upheld the decision of the lower court
in reducing the alimony to a nominal sum and in
ruling that the remarriage constituted a *prima facie*
cause for reduction of the alimony.

4. There is no contention here that the wife ever
brought any property into the estate of her hus-
band, or that the award of alimony or maintenance
was based upon the relinquishment of any property
rights. She is remarried. It is admitted that her
husband is amply able to support her, and that he
is supporting her. Under this state of facts, when
the divorced wife elected to marry her present
husband, she waived her legal right to claim support
from a former husband, and the court was em-
powered to modify the decree so as to fit the situa-
tion: Section 514, Or. L.

The order appealed from is reversed and the de-
cree of divorce, in so far as it relates to alimony,
is modified, in this: that the payment of alimony

accruing subsequent to the filing of the motion in the court below will be discontinued.

Neither party shall recover costs in this court.

REVERSED AND DECREE ENTERED.

---

Rehearing denied October 23, 1925.

ON PETITION FOR REHEARING.

(240 Pac. 237.)

For the petition, *Mr. Milton R. Klepper* and *Mr. W. G. Magill.*

No appearance *contra.*

BROWN, J.—On October 16, 1922, Winnifred W. Phy was granted a decree of divorce from W. T. Phy by the Circuit Court for Union County, Oregon, and, pursuant to a stipulation between the parties, which was filed in court and made a part of the decree, a settlement of property rights and alimony was had. On April 12, 1924, Phy petitioned the court for a modification of that provision of the decree awarding alimony to his former wife, on the ground that she had remarried. His petition was denied. He appealed to this court, and on June 16, 1925, his petition was allowed and decree modified by order of the court that the payment of alimony accruing subsequent to the filing of the motion in the court below be discontinued: See *ante,* p. 31 (236 Pac. 751). Winnifred W. Clemans, formerly Winnifred W. Phy, asks for a rehearing.

The stipulation between the parties, of date August 31, 1922, and purporting to settle property rights and alimony, provides, among other things:

"Whereas, the parties hereto are living apart and desire to make a settlement of all matters of property and alimony between them * * ,

"Now, therefore, in consideration of the premises, and in consideration of the fact that the parties hereto are living apart and will continue to live apart, it is hereby agreed by and between the parties hereto that the party of the first part will, on demand, after the execution of this agreement, assign and transfer, and have transferred upon the books of the Hot Lake Sanatorium, a corporation, * * 170 shares of stock in said Hot Lake Sanatorium, and will, within a reasonable time after demand, crate and deliver to the party of the second part, f. o. b. the cars at Hot Lake, Oregon, the Chickering baby grand piano now owned by the party of the first part at Hot Lake, Oregon, *and said party of the first part will pay alimony to said party of the second part as follows*: $500 on or before the fifth day of September, 1922; and $500 on or before the fifth day of October, 1922; and $100 on or before the fifth day of each and every month thereafter for a period of not to exceed 65 months, which said payment shall not exceed an aggregate sum of $7,500, which payment of alimony shall be in lieu of all other alimony heretofore ordered by said court."

The next paragraph of the stipulation provides that, in the event a divorce shall be granted to either party, then the agreement shall constitute a property settlement and settlement of alimony, "and shall be taken as a full and complete settlement of all property interests and alimony between the parties, and neither party hereto shall be compelled to pay, nor either party hereto can recover,

any more property or alimony than is as herein set out, and such property settlement and agreement of alimony shall be in full for all property rights, costs, attorney's fees, and alimony in any suit whatsoever.''

We quote the following from the petition for rehearing:

''The court's attention is called to the fact that nowhere in the record does it appear that the respondent's present husband is amply able to support her or that he is in other than very mediocre circumstances.''

Now, turning to the judgment rendered in the court below, we quote an excerpt reading:

''In the fall of 1923, defendant was married to one John Doe Clemans; * * that (upon admission made at the hearing) the present husband of defendant is supporting her and is capable of supporting her.''

Bearing in mind the above statement of fact in the decree relating to the ability of the defendant's husband to support her, this court, in setting aside the provision of the decree relating to alimony, followed the prevailing rule in cases of remarriage of a divorced wife. The courts have many times said:

''The divorced wife abandons the provision made for her support out of the estate of her former husband by the decree of the court, for that adequate support which she contracts for by her second marriage. It is a matter that affects her own happiness, and about which she is perfectly free and competent to make a choice. Whether she acts wisely in her election and whether * * she obtains as good or as adequate a support by her marriage as that which she abandoned, are questions about which courts can have no concern. It is a matter of her

own voluntary election." *Stillman* v. *Stillman,* 99 Ill. 196 (39 Am. Rep. 21).

In the case of *Emerson* v. *Emerson,* 120 Md. 584 (87 Atl. 1033), the Supreme Court of Maryland, in an elaborate discussion of this question, wrote:

"It seems clear that when a woman remarries, the new husband has cast upon him the duty of support, and it would seem, in all reason, that the man who was performing this duty under the order of court should be relieved. Although by the divorce they are no longer husband and wife, the statute requires that the former husband should still perform the duty of support; but where another man assumes this duty of maintenance, it cannot be the intent of the law that the former obligation should remain and that a woman should thus be entitled to the same support from two men."

This is the generally accepted doctrine: See *Brown* v. *Brown,* 38 Ark. 324; *Casteel* v. *Casteel,* 38 Ark. 477; *Tremper* v. *Tremper,* 39 Cal. App. 62 (177 Pac. 868); *Morgan* v. *Lowman,* 80 Ill. App. 557; *Hartigan* v. *Hartigan,* 145 Minn. 27 (176 N. W. 180). See, also, notes, 62 L. R. A. 975; 11 Ann. Cas. 523. For additional authorities, see cases cited in *Phy* v. *Phy, ante,* p. 31 (236 Pac. 751).

The petitioner calls our attention to the case of *Moore* v. *Moore* (Wyo.), 237 Pac. 235. There is nothing in our decision in the case at bar which is repugnant to the doctrine enunciated in that case. In fact, a review of the Moore case reveals that the cases differ widely in point of fact. In that case, Moore made application "to modify decree for alimony," on the ground that the divorced wife had remarried. The divorced wife, in her answer to the application, admitted her remarriage,

but alleged affirmatively that "the award of $10,000 permanent alimony was based upon loans made by plaintiff to defendant during their married life." On trial the court found, among other things, that, since her marriage with Moore, the divorced wife had contributed not less than $5,000 from her own funds, and that the alimony was "in the nature * * of a settlement of the claim of plaintiff against defendant, and that therefore the said decree should not at this time be modified."

The petitioner also cites the case of *Henderson* v. *Henderson,* 37 Or. 141 (60 Pac. 597, 61 Pac. 136, 82 Am. St. Rep. 741, 48 L. R. A. 766). This case can afford her no relief. A careful study of the facts discloses that the divorced wife averred and proved that, in consideration of the husband's agreement to pay, she had relinquished all her right and interest in and to valuable property, both real and personal, thereby evidencing a valuable consideration moving from her to the divorced husband for the payments decreed.

5. In the case at bar there is no showing by Winnifred W. Phy that the alimony was based upon a property consideration, neither was any proof offered to that effect. Nor was there any showing made that, notwithstanding she had remarried, her circumstances were such that alimony should still be paid to her. The stipulation shows both a property and an alimony settlement, but it does not show that the alimony awarded was based upon property rights of the wife. In this jurisdiction, a decree for alimony is subject to modification by the court in which it was entered, according to the varying circumstances of the parties.

Section 511, Or. L. enacts:

"Whenever a marriage shall be declared void or dissolved, the party at whose prayer such decree shall be made shall in all cases be entitled to the undivided third part in his or her individual right in fee of the whole of the real estate owned by the other at the time of such decree, in addition to the further decree for maintenance provided for in Section 513; and it shall be the duty of the court in all such cases to enter a decree in accordance with this provision."

Section 513 provides:

"Whenever a marriage shall be declared void or dissolved, the court shall have the power to further decree as follows: * *

"3. For the recovery of the party in fault such an amount of money, in gross or in installments, as may be just and proper for such party to contribute to the maintenance of the other."

Now, quoting from Section 514:

"At any time after a decree (divorce) is given, the court or judge thereof, upon the motion of either party, shall have power to set aside, alter, or modify so much of the decree as may provide for the * * maintenance of either party to the suit."

Under the written stipulation on file herein providing for alimony, neither party to the decree was barred from petitioning for a modification of the provision relating to maintenance, because the writing upon which the court's decree was based does not of itself establish the contention now made by petitioner that the alimony provision was the result of a property settlement. There is no contention by answer or evidence that the provision of the stipulation relating to the payment of alimony was based upon any property right. The stipula-

tion did not determine the amount of alimony. It simply recited that the maximum should not exceed $7,500, and limited the period of payment to "not to exceed 65 months." It is probable that the wording of the stipulation was made, not only with knowledge of, but to conform to, the provisions of Section 514, Or. L., quoted above, which authorizes the court, upon the application of either party, to increase or decrease the amount of alimony from time to time, as required by the needs, ability and circumstances of the parties. The moving party is authorized by law to proceed by motion or petition to the court that granted the divorce.

"All relevant evidence should be received, including evidence received at the original trial. * * Furthermore, either party may introduce evidence and cross-examine witnesses." 7 Standard Encyc. of Proced., p. 845.

In his dissenting opinion, Mr. Justice BEAN quotes from Section 766, Keezer on Marriage and Divorce (2 ed.), to the effect that alimony based on agreement of the parties or on a contract will not be modified by the court. Now, turn to Section 772 of the same text-book and read:

"Generally the remarriage of a divorced wife terminates the alimony, or so much of it as does not go to the support of minor children, and this though the decree for alimony is entered by consent of the parties."

6. It is likewise asserted that the trial court was in a better position than is the Supreme Court to determine the facts involving the basis of the alimony agreement. We concede that, in a hearing under the usual procedure, the lower court has a much better opportunity to weigh the evidence and

to arrive at the truth from controverted facts than has the appellate court. But, in the case at bar, the lower court based its decree awarding alimony wholly upon a stipulation made in writing, and the record of that writing is before us. The case is heard here anew upon the identical writing that was before the court below. The words of that writing, in this court as in that court, are to be given their ordinary meaning. From the language thereof, we deduce that the word "alimony" was used in its ordinary sense.

"Alimony is the allowance which the husband is compelled to pay for his wife's maintenance while she is living apart from him, or after she has been divorced. * * The law will recognize her right of support and maintenance and will make provision for her out of his income or estate. It is founded upon the marital obligation to support and maintain, and is awarded by the court in enforcement of this obligation and duty." Keezer, Marriage and Divorce (2 ed.), § 660.

Again, the author says, at Section 674:

" * * The divorce with its incidental allowance of alimony simply continues his duty beyond the decree, and compels him to perform it, but does not change its nature. The form and measure of the duty are indeed changed, but its substance remains unchanged."

7–11. The right of alimony rests upon the relation of the parties. It is the duty of the husband to support his wife. However, when she is united in marriage with another man, it becomes that man's duty to furnish her maintenance. Any other doctrine would be repugnant to public policy as announced by the courts. The award made by the decree is not a debt due the wife, but is main-

tenance prescribed and defined by law. See opinion by Mr. Justice PITNEY, in *Lynde* v. *Lynde,* 64 N. J. Eq. 736 (52 Atl. 694, 97 Am. St. Rep. 692, 58 L. R. A. 471), wherein the eminent jurist held that a wife's claim to permanent alimony is a personal right, and not a property right.

In the instant case, the stipulation did award the wife certain designated personal property, and that property is hers forever.

It is also asserted that we have "overruled or changed" the opinions in *Henderson* v. *Henderson, supra,* and *Brandt* v. *Brandt,* 40 Or. 477 (67 Pac. 508). In this the learned justice is in error. In our former opinion we cited with approval and followed the doctrine enunciated in each of the cases cited above. See *Phy* v. *Phy, ante,* p. 31 (236 Pac. 751).

Under the public policy of Oregon, as declared by this court, a married woman must look to that man who is her husband for support for herself. And, whenever a married woman divorces her husband and chooses another, she must look to that other, and not to the discarded one, for support for herself arising out of the marriage status. Hence, we must deny counsel's able petition for a rehearing.            REHEARING DENIED.

BEAN, J., dissents.

BEAN, J., Dissenting.—I am unable to concur in the majority opinion herein. I do not question the propriety of modifying a decree awarding alimony where it is for maintenance only, and where the conditions have changed since the adjudication, and the decree is not based upon any consideration of property rights of the wife, as in *Brandt* v. *Brandt,*

40 Or. 477, 486 (67 Pac. 508, 510), but as said by Mr. Justice WOLVERTON, as found on the last-named page:

"And where the allowance proceeds from a consideration of the restitution of property brought to the husband by reason of the marriage, or the partition of property accumulations, it should be regarded as a final adjudication of the matter: *Cole* v. *Cole*, 142 Ill. 19 (31 N. E. 109, 34 Am. St. Rep. 56, 19 L. R. A. 811)."

On October 16, 1922, the court granted the defendant, Winnifred W. Phy, a decree of absolute divorce against the plaintiff, W. T. Phy. In regard to the settlement of property rights and money matters, the court found and decreed partly as follows:

"And it further appearing to the court that the property rights of the parties herein were settled as shown by the record herein * * ORDER, ADJUDGE, AND DECREE that the plaintiff, W. T. Phy, within a reasonable time, after demand, crate and deliver to the defendant, f. o. b. cars at Hot Lake, Oregon, said Chickering baby grand piano, and that plaintiff pay to the defendant $100 in cash, on or before the 5th day of November, 1922, and $100 on or before the fifth day of each and every month thereafter for a period of not to exceed sixty-four (64) months."

The record shows the parties had been married about 12 years. On April 12, 1924, the plaintiff filed a motion to modify the decree and discontinue the alimony for the reason that the defendant had remarried, which is supported by affidavit.

The court made findings of fact and denied the motion to modify the decree. In the findings of fact, upon which the decree denying the motion to modify was based, the court sets out the stipula-

116 Or.—4

tion of the parties upon which the original decree
in regard to the settlement of property rights,
money matters and alimony was based, which agree-
ment was in substance embodied in the original de-
cree. From the stipulation it appears that the
parties had theretofore separated and were living
apart. The stipulation recites, among other things,
the following:

"WHEREAS, the parties hereto are living apart
and desire to make a settlement of all matters of
property and alimony between them and by this
agreement do hereby make such settlement of said
property without prejudice to the rights of either
party so far as the divorce or marriage relations
are concerned, and said parties specifically hereby
state that this agreement shall not be taken as an
agreement that either party hereto shall or shall
not secure a divorce, but this agreement is to be
taken only by the parties hereto and by the court
as a settlement of property rights and alimony
only.

"Now, THEREFORE, in consideration of the prem-
ises and in consideration of the fact that the
parties hereto are living apart and will continue to
live apart, it is hereby agreed by and between the
parties hereto that the party of the first part will,
on demand, after the execution of this agreement,
assign and transfer, * * " (Here follows the agree-
ment substantially as set forth in the decree.)

The agreement concludes thus:

"It is further agreed by and between the parties
hereto that in case any divorce is granted to either
of the parties at any time in any suit, *that this
agreement is a property settlement* and alimony,
shall be taken as a full and complete settlement of
all property interests and alimony between the par-
ties and neither party hereto shall be compelled to
pay, nor either party hereto can recover any more

property or alimony than is as herein set out, and such property settlement and agreement of alimony *shall be in full for all property rights, costs, attorney's fees, and alimony in any suit whatsoever, whether now pending or hereafter in any place begun."* (Italics ours.)

The plaintiff appealed from the decree.

Section 514, Or. L., provides as follows:

"Power of Court to Modify Decree. At any time after a decree is given, the court or judge thereof, upon the motion of either party, shall have power to set aside, alter, or modify so much of the decree as may provide for the appointment of trustees for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party to the suit."

In the note to that section we read:

"A modification of the alimony clause of a divorce can be made only by a motion in the original suit, as under this section, the court retains jurisdiction for that purpose: *Corder* v. *Speake,* 37 Or. 108, (51 Pac. 647)."

As we understand the matter, the question for determination in this suit is whether or not a decree for alimony based upon an agreement regularly made and sanctioned by the court settling the property rights of the parties, where "such property settlement and agreement of alimony shall be in full for all property rights, etc.," can be modified by a subsequent decree without impairing the obligations assumed by the contract of the parties.

The trial court, as a reason for denying the motion to modify, stated:

"If the stipulation was a settlement of property rights, then the court has no power to modify the decree founded upon the stipulation. If, however,

the allowance to the defendant was simply for support, the court may in its discretion relieve the plaintiff from the payment of the alimony. *Henderson* v. *Henderson,* 37 Or. 141 (60 Pac. 597, 61 Pac. 136, 82 Am. St. Rep. 741, 48 L. R. A. 766); *Brandt* v. *Brandt,* 40 Or. 477 (67 Pac. 508); *Cohen* v. *Cohen,* 150 Cal. 99 (88 Pac. 267, 11 Ann. Cas. 520); *Hogerty* v. *Hogerty,* 188 Cal. 625 (206 Pac. 79). It seems to me that the stipulation is as it purports to be,—a settlement of the property rights of the parties, and the provision for the payment of alimony was not an allowance simply for the support of the defendant. * * The fact that the sum of $6,500 was to be paid in installments of $100 a month does not affect the matter: *Lally* v. *Lally,* 152 Wis. 56 (138 N. W. 651). In the case of *Henderson* v. *Henderson, supra,* the decree unsuccessfully attempted to be modified provided that the defendant was to pay the sum of $150 a month during her natural life. Furthermore in the case of *Marregang* v. *Marregang,* 31 S. D. 459 (139 N. W. 341), it is held that the court in decreeing alimony in gross sums takes into consideration the probable duration of the life of each of the parties to the marriage contract, the possibilities of remarriage and sickness, and all other conditions, and that an allowance in gross is *res adjudicata.*

"It seems to me for the court to hold that the payment of $6,500 in installments of $100 a month was not one of the agreements entered into embodied in the settlement of the property rights of the parties, would be for the court to do violence to the stipulation, which the parties have entered into."

The same judge who rendered the original decree passed on the motion to modify and had the record of the case before him. The testimony taken upon the original hearing is not contained in the record and while the trial court had the benefit

of such a testimony, this court is in the dark as to the same. The discretion of the trial court enters somewhat into the matter of determination of the question involved: See 44 L. R. A. (N. S.), note 1; Keezer on Marriage and Divorce, § 277, p. 151. A multitude of cases recognize this rule in regard to judicial discretion. At least the findings of the trial court should be given great weight.

From the affidavits and meager matters contained in the record it seems that the plaintiff, Dr. W. T. Phy, was a skillful physician and a man of large affairs, that there was nothing inequitable in the allowance of the alimony. There was no dispute in regard to the fact that the defendant remarried. This, of itself, as it is well established, is not a compelling cause for the modification of the decree. While if the decree is one that may be modified, it is a circumstance strongly in favor of such modification.

The general rule of law in relation to the question is indicated by the following authorities, and we especially call attention to the two able opinions enunciated by Mr. Justice WOLVERTON, herein referred to.

*Henderson* v. *Henderson,* 37 Or. 141, 145 (60 Pac. 597, 61 Pac. 136, 82 Am. St. Rep. 741, 148 L. R. A. 766), which is a very thoroughly considered case, was an application by the former husband for a modification of a decree of divorce rendered against him in favor of his wife. On February 4, 1894, the plaintiff was granted a divorce from the defendant, and in the decree therefor the defendant *inter alia* was required to support and educate the minor child and to pay to plaintiff, during the term of her natural life, the sum of $150 per month. On January 6, 1897, the defendant ap-

plied to have the last-named amount reduced to $75 per month on account of the change in his ability to pay, occurring since the decree of divorce was rendered. It appears that in January before the decree was rendered, the plaintiff and defendant entered into an agreement "settling and adjusting as between themselves their property rights." The defendant agreed to pay the amount of $150 per month to plaintiff through a bank, and plaintiff and defendant executed a trust deed to secure such payment. The agreement as to the alimony was embodied in the decree. From the decree in favor of the plaintiff wife, denying the modification as to alimony, the defendant appealed.

Mr. Justice WOLVERTON, after stating the facts, said:

"We are now to determine whether the facts set up by the answer to the defendant's petition constitute a defense to a modification of the decree in so far as it provides for the maintenance of the divorced wife. The facts relied upon are set forth by way of estoppel to the defendant insisting upon the modification, it being urged that a valid and binding agreement, based upon a sufficient consideration, was entered into by and between the parties, and that, the decree having been given and rendered in pursuance thereof, neither party can now be heard, without the consent of the other, to deny its validity or binding force and effect."

After a thorough discussion, and reference to several cases, the opinion concludes on page 152 (60 Pac. 600) as follows:

"We conclude, therefore, in consonance with these latter authorities, that the better rule is that, notwithstanding the court has power and authority to modify its decree of divorce touching the awarding

of a sum of money for the maintenance of either
the husband or wife by the other subsequent to
the entering of the decree, yet, nevertheless, they
may agree in a proper case touching the amount of
such sum and the manner of its payment, subject
to the approval of the court as to its validity in
good morals and as conformable to public policy,
and in further consideration of the status and con-
dition of the parties relating to the question of its
fairness and equability of adjustment; but that,
*when such an agreement has been approved by
the solemn decree of the court, it becomes forever
binding, to the same degree and with like effect as
ordinary contracts between parties admittedly sui
juris, and is not subject to revocation or modifica-
tion, except by the consent of the parties thereto."*
(Italics ours.)

After a careful examination of the opinion in the
Henderson case, we are led to believe that while
a different rule prevails in some states, this court
is committed to the doctrine announced in that
case, which if applied to the case in hand would
result in an affirmance of the decree of the trial
court. The principles applied in the Henderson
case, it is understood, is the same as that involved
in the case in hand.

In *Buck* v. *Buck,* 60 Ill. 241, a decree was granted
the wife, reciting, among other things, that, alimony
having been settled between the parties upon the
basis therein stated, it was accordingly decreed that
the husband pay to the wife $12,000, and the further
sum of $1,000, the value of certain furniture and
silverware, and that he should maintain and educate
an adopted child. The case went to the Supreme
Court, and as a ground of reversal it was urged
that the alimony allowed by the court was excessive
and oppressive. But it was held that the husband,

having consented to the provisions of the decree, should have no relief against his own voluntary agreement, the court saying:

"Whether the alimony is too high, or whether the court had any lawful authority to make provision for the maintenance of the adopted daughter without the consent of the plaintiff in error, it is not now necessary for us to express an opinion. It was competent for the plaintiff in error to consent to such decree, and, having done so, it must remain forever binding on him."

In 2 Schouler, Marriage & Divorce (6 ed.), Section 1829, we read:

"The court cannot modify a decree entered by consent of all parties as to alimony, or based on contract and an allowance based on agreement may not be regarded as 'alimony' subject to change by the court, but it has been held that a statute authorizing the court to modify alimony will apply to a decree based on a property settlement." Citing: *Van Sickle* v. *Harmeyer*, 172 Ill. App. 218; *Carr* v. *Carr*, 185 Iowa, 1205, (171 N. W. 785); *Hatfield* v. *Hatfield*, 59 Okl. 132 (158 Pac. 942); *Emerson* v. *Emerson*, 120 Md. 584 (87 Atl. 1033); *Wallace* v. *Wallace*, 74 N. H. 256 (67 Atl. 580, 13 Ann. Cas. 293). See *Soule* v. *Soule*, 4 Cal. App. 97 (87 Pac. 205); *Stanfield* v. *Stanfield*, 22 Okl. 574 (98 Pac. 334); *Lally* v. *Lally*, 152 Wis. 56 (138 N. W. 651); *Newbold* v. *Newbold*, 133 Md. 170 (104 Atl. 366).

In Keezer on Marriage and Divorce (2 ed.), Section 766, it is said:

"*Alimony based on agreement.* Where alimony is based on consent of all parties, or on a contract, the court has no power to modify the terms agreed upon for alimony." Citing: *Mathews* v. *Mathews*, 49 Cal. App. 497 (193 Pac. 586); *Le Beau* v. *Le Beau*, 80 N. H. 139 (114 Atl. 28). *Contra:* *Emerson* v. *Emerson*, 120 Md. 584 (87 Atl. 1033) (as

validity depends on the decree and not on the contract); *Wallace* v. *Wallace,* 74 N. H. 256 (67 Atl. 580, 13 Ann. Cas. 293).

In *Roby* v. *Roby,* 9 Idaho, 371 (74 Pac. 957, 3 Ann. Cas. 50), the court said:

"The trial judge is in a better position than this court to know the amount of money necessary for the payment of costs and disbursements in the prosecution of an appeal, and the ability of the husband to meet such requirements. He knows all the facts in the case, and the situation and condition of the parties."

In *Ex parte Lohmuller,* 103 Tex. 474 (129 S. W. 834, 29 L. R. A. (N. S.) 303), it was said:

"In all ordinary cases the lower court is the one which should be called upon to act. To it parties can have ready access, and easily procure evidence, the production of which before an appellate court would often be both inconvenient and costly." Citing: *Lane* v. *Lane,* 26 App. D. C. 235 (6 Ann. Cas. 683). See, also, *Haddock* v. *Haddock,* 75 App. Div. 565 (78 N. Y. Supp. 304).

In 19 C. J., page 272, we read:

"*Allowance in gross.* Statutes have been held not to apply to a decree awarding an allowance in gross, allotting specific property in fee, *or making a final division or distribution of the husband's estate;* but it has also been held that the court has power under such statutes to revise or modify a judgment for cash alimony whether payable in gross or in installments." Citing: *Fenn* v. *Fenn,* 23 Ohio C. C. (N. S.) 205; *Cody* v. *Cody,* 47 Utah, 456 (154 Pac. 952); *Zentzis* v. *Zentzis,* 163 Wis. 342 (158 N. W. 284); *Smith* v. *Smith,* 45 Ala. 264; *Plaster* v. *Plaster,* 47 Ill. 290; *Martin* v. *Martin,* 195 Ill. App. 32; *Plotke* v. *Plotke,* 177 Ill. App. 344; *Griswold* v. *Griswold,* 111 Ill. App. 269; *Barkman* v. *Barkman,* 94 Ill. App. 440; *Shaw* v. *Shaw,* 59 Ill. App. 268;

*Guess* v. *Smith,* 100 Miss. 457 (56 South. 166, Ann.
Cas. 1914A, 300); *Cody* v. *Cody,* 47 Utah, 456 (154
Pac. 952). (We italicize.)

In Wisconsin, as shown by the opinion of *Blake*
v. *Blake,* 68 Wis. 303 (32 N. W. 48), Id., 75 Wis. 339
(43 N. W. 144), it has been held, in effect, that
under a statute authorizing the court to revise and
alter a decree in respect to alimony or an allow-
ance for the wife and children, that notwithstanding
the parties may have entered into an agreement
anterior to the decree, yet the court was author-
ized to subsequently modify the allowance.

In *Henderson* v. *Henderson, supra,* at page 149,
of the report, Mr. Justice WOLVERTON, in discussing
this question, after referring to and citing the Wis-
consin case, proceeds to state thus:

"The strong tendency of adjudications elsewhere,
however, establishes a contrary doctrine,—that when
parties have agreed between themselves touching the
allowance, and the same is reasonable, and such as
ought to be granted under the circumstances and
conditions attending the divorce proceedings, having
in view the station and capabilities of the parties
to respond, and not being contrary to the policy
of the law, such an agreement, subject to the ap-
proval of the court, is binding upon the parties
thereto."

In 1 R. C. L., Section 693, page 947, the rule is
declared as follows:

"Notwithstanding the court has power and au-
thority to modify its decree of divorce touching
the allowance of a sum of money for the main-
tenance of the wife, yet, nevertheless, she and her
husband may agree in a proper case touching the
amount of such sum and the manner of its pay-
ment, subject to the approval of the court as to
its validity in good morals and as conformable to

public policy, and in further consideration of the status and condition of the parties relating to the question of its fairness and equability of adjustment. The authorities generally hold that when such an agreement has been approved by the solemn decree of the court, it becomes forever binding, to the same degree and with like effect as ordinary contracts between parties admittedly *sui juris* and is not subject to revocation or modification except by the consent of the parties thereto. But where the allowance is not entirely dependent on the agreement of the parties, the power of subsequent modification cannot be controlled by it *in toto*; for as the court is not, in the first instance, bound by such agreement concerning the amount of alimony to be allowed to the wife, *a fortiori* the agreement cannot hinder the court in altering that portion of its own decree of allowance which is not based upon the agreement; on the other hand, the court cannot alter or modify the decree, in so far as it is based on the contract of the parties, for such a modification of the decree would be no less than a modification of the contract itself. It has been held to the contrary, however, that a decree for alimony entered by consent is subject subsequently to be modified by the court, for the reason that the validity of such an allowance depends upon the judicial sanction of the court and not upon the agreement of the parties. In reaching this conclusion the courts have proceeded upon the ground that there could be no decree without the intervention of the court, and that the agreement was simply evidence of the questions involved, submitted for its consideration. It is rather hard to perceive, however, the line of distinction thus drawn between a decree for alimony by agreement of the parties, and any other judgment entered by consent, inasmuch as even the latter is based on the sanction of the court, express or implied." *Pryor* v. *Pryor,* 88 Ark. 303 (114 S. W. 700, 129 Am. St. Rep. 102); *Julier* v. *Julier,* 62 Ohio St. 90 (56 N. E. 661, 78 Am. St. Rep.

697); *Henderson* v. *Henderson,* 37 Or. 141 (60 Pac. 597, 61 Pac. 136, 82 Am. St. Rep. 741, 48 L. R. A. 766); *Buckminster* v. *Buckminster,* 38 Vt. 248 (88 Am. Dec. 652).

In 2 L. R. A. (N. S.) 241, paragraph IV, we read:

"Alimony may be agreed upon by the parties through a trustee, and also after or during the pending of an action for divorce; and in that case the agreement, or the decree when it embodies the terms of the agreement will be enforced, even if it should require continuance beyond the life of the husband."

This is followed by a wealth of authorities, among which is the case of *Stratton* v. *Stratton,* 77 Me. 373 (52 Am. Rep. 779), where during the pendency of cross-libels for divorce the parties entered into an agreement that, in case of divorce entered upon the husband's libel, two referees should determine what alimony the wife should receive, and how she should receive it; and that the report of the referees should be made a part of the decree, and binding on the parties. Their award and this agreement were extended on the record. The award was to the wife "during her natural life, an annuity * * to be paid quarterly." Upon a decree of divorce, the court ordered "that alimony according to the award * * be received and paid as therein provided." The defendant paid for a time, then ceased paying, and finally died.

In an action for debt it was held in effect that where the language of the decree especially states that the alimony is to continue after the death of the husband, the authorities hold that it will so continue. In the same note we find at page 242: "In *Adams* v. *Storey,* 135 Ill. 448 (26 N. E. 582,

25 Am. St. Rep. 392, 11 L. R. A. 790), the widow claimed dower in addition to the alimony granted in *Storey* v. *Storey, supra,* but the court held that the consent decree was intended to be in lieu of dower, and refused it." It is well established that a decree rendered by consent cannot be reviewed upon appeal. This for the reason that parties are bound by their valid contracts. It is difficult to discern any distinction in principle between a consent decree and a portion of a decree entered by consent of the parties, especially when such agreement relates to involved property interests.

It is plain from the stipulation that Mrs. Phy would not or did not release her claim to a portion of the property of Dr. Phy, including dower without the payment, or covenant to pay $6,500 in monthly installments. To modify the decree of the court is to change the solemn contract of the parties, which was approved by the court and embodied in the decree, and make a new contract for them.

The settlement of the property interests and the adjustment of the alimony under the terms of the agreement cannot be segregated. The release of the claims of Mrs. Phy to the property of Dr. Phy was made in consideration of his promise to pay and deliver both the property mentioned and the alimony. This is shown by the stipulation. The case stands the same as it would if in the settlement of their property rights the husband had agreed to convey and afterward had conveyed to the wife as her share in lieu of alimony certain real estate; and the wife had relinquished her right to all other property of the husband. The whole matter was settled by the agreement sanctioned by the original decree and is *res adjudicata.* The opinions in the

case of *Henderson* v. *Henderson* and *Brandt* v. *Brandt, supra,* should not be overruled or changed.

It is understood that counsel did not direct the attention of the court to the matter above referred to and that the same was not passed upon in the former opinion of Mr. Justice BROWN.

A rehearing should be granted and the matter given further consideration.