Argued January 19, affirmed as modified, costs to appellant
March 28, 1977

In the Matter of the Dissolution of the Marriage of
GROVE, *Appellant—Cross-Respondent,*
*v.*
GROVE, *Respondent—Cross-Appellant.*
(No. 75-4803, CA 6484)
561 P2d 1034

Margie Hendriksen, Eugene, argued the cause for appellant—cross-respondent. With her on the briefs was Englemann, Hendriksen & Ozanne, Eugene.

John C. DeWenter, Springfield, argued the cause for respondent—cross-appellant. On the brief were William A. Babcock, and Babcock and Ackerman, Springfield.

Before Schwab, Chief Judge, and Lee and Johnson, Judges.

SCHWAB, C. J.

Johnson, J., dissenting opinion.

## SCHWAB, C. J.

The wife appeals the dissolution-of-marriage decree, contending that the award of spousal support and the division of property were inequitable. The parties were married for 23 years. Both are in their mid-forties and in good health.[1] The husband holds a Ph.D. degree in economics and is a department chairman in a university. His annual income including part-time summer teaching is about $25,000. The wife has two years of college education and has secretarial experience. She presently is employed in a clerical capacity and has an annual income of $5,400. A vocational expert testified that a person with the wife's training, experience and intelligence is capable of earning $7,200 to $9,600 annually. The wife was awarded custody of the two minor children aged 13 and 16, and $250 per child per month in child support. The marital property consisted only of the equity in the home ($12,670 to $15,100), the husband's equity in his retirement plan ($13,396), and miscellaneous personal property of relatively minor value. The trial court awarded the home to the wife and the retirement equity to the husband and divided the personal property on a roughly equal basis. The wife was awarded $150 per month for five years as spousal support, and attorney fees.

In *Kitson and Kitson*, 17 Or App 648, 523 P2d 575, Sup Ct *review denied* (1974), this court set down certain principles for the award of support to a spouse:

"While each case must be decided on its own facts and no formula can be stated, certain principles emerge from an examination of the above cases. The most significant factor usually is whether the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during the marriage. The wife's employability includes consideration of her education, training, experience, age, health, capacity, whether she

[1]The wife testified that she has been "troubled with a variety of nervous ailments," but there is no evidence that this affected her ability to work or her desire to return to college.

has custody of small children, etc. Length of the marriage is germane because the longer the marriage, the more likely it is that the wife has foregone employment experiences, the absence of which will make it more difficult for her to achieve employment and self-sufficiency. If the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during marriage, then, generally speaking, if support is appropriate it should be for a limited period of, for example, one to three years. In such a situation, it is not the policy of the law to give the wife an annuity for life or, stated differently, a perpetual lien against her former husband's future income. Conversely, if the wife is not employable or only employable at a low income compared to her standard of living during marriage then, generally speaking, permanent support is appropriate." 17 Or App at 655-56.

Even under the most optimistic predictions of the wife's earning capacity, there will probably be a substantial disparity in the future earned incomes of the parties. We find the award of spousal support inadequate and hold that it should be $200 per month until death or remarriage.

Affirmed as modified. Costs to appellant.

**JOHNSON, J.,** dissenting.

The award of spousal support is inadequate and should not automatically terminate upon remarriage.

In the traditional marriage there was a division of labor between the parties wherein the husband served as breadwinner and the wife as homemaker. Because of the universality of that division and other reasons, courts historically viewed marriage as a relationship which by law established rights and duties of the parties. The wife was looked upon as a ward to whom the husband owed a duty of support. In turn the wife owed to the husband certain subservient duties including the recognition that he was the head of the family. *See,* e.g., *Hollingsworth v. Hollingsworth,* 191 Or 374, 382, 229 P2d 956 (1951). Such view of the marriage

relationship no longer has efficacy either in principle or practice, but vestiges of the antiquated notion continue.

The wife is neither a ward nor subservient, but rather an equal partner. The relationship should be viewed as consensual in nature wherein the division of labor is established not by law but by the explicit or implicit agreement of the parties. There is no longer a conventional division of labor. The wife alone may be the breadwinner or more commonly husband and wife share responsibilities as breadwinners and homemakers. Even where the traditional division of labor exists, the parties have in effect agreed that in return for the husband working as the breadwinner the wife will forego the development of such skills and devote her efforts to performing homemaking chores.

Marriage is in effect an economic entity or going concern, and in dissolution of the marriage partnership courts should apply principles similar to those applied in dissolving a business partnership. The affairs of the partnership should be wound up in a manner which is consistent with the contractual understanding of the parties during the partnership. The courts are statutorily afforded the tools to make such dissolution by making provisions for custody and support of children, division of assets and spousal support. These provisions should not be viewed separately in a vacuum, but rather as a coherent whole for dissolving the marriage partnership as a going financial concern consistent with the consensual undertakings of the parties and the legal duty of both parties to provide support for the children.

The majority relies on *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, Sup Ct *review denied* (1974), wherein we set down basic principles for determining spousal support. That opinion is consistent with the consensual conceptualization of the marriage relationship. In *Kitson* the court refutes the idea that the wife is a ward of the husband. Rather, she is expected to

seek economic self-sufficiency and "it is not the policy of the law to give the wife * * * a perpetual lien against her former husband's future income." *Kitson and Kitson,* 17 Or App at 656. A wife is entitled to spousal support where her work effort on behalf of the marriage has required that she forego employment experiences, "the absence of which will make it more difficult for her to achieve employment and self-sufficiency." *Kitson and Kitson,* 17 Or App at 655. I do not disagree with the majority's reliance on *Kitson,* but with the failure of the majority to give consideration to the other financial aspects of this particular marriage partnership.

We have here a factual situation that is common to many modern marriages and substantially departs from the traditional division of labor. At the time of the marriage both parties were just beginning their college education. The wife quit college and became employed as a secretary. She was the principal breadwinner during the first seven years of the marriage thus making it possible for the husband to complete his undergraduate and graduate training. The wife's parents made loans to the parties to assist them through this difficult period. After the husband attained his graduate degree, the wife continued to assist him not only as a homemaker, but also by typing his manuscripts and entertaining his colleagues. On occasion she supplemented the family income by part-time work. The principal asset of the marriage is not the physical assets, but the husband's enhanced earning power derived from the contributions of both parties during the marriage. It is an intangible asset incapable of practical evaluation or division. Nonetheless, the wife forewent her own college training, became the temporary breadwinner, homemaker and, as the husband concedes, made a valuable contribution throughout the marriage to his career. Although she has already reaped some benefits from her investment, she is entitled to spousal support which at least in part recognizes the reasonable expectations of that

investment. Otherwise the husband leaves the marriage with substantial earning power derived from the joint efforts of the parties during the marriage. The wife leaves the marriage with relatively meager earning power, having made a substantial forebearance contributing her efforts to the husband's career. Under these circumstances equity requires in determining spousal support that recognition be given to the wife's contribution. In giving such recognition the wife is not entitled to a perpetual lien against the husband's future. Divorce terminates the marital status and the husband's future destiny will be his own making. "The statute does not contemplate a continuing right in her to share in future accumulations of wealth by her divorced husband to which she contributes nothing." *Feves v. Feves,* 198 Or 151, 164, 254 P2d 694 (1953). She is entitled to recognition for her contribution to the husband's *present* earning power as enhanced by the marriage. How he uses that earning power in the future is for him to determine.

Spousal support of $200 per month as established by the majority is reasonable during the period that the children are in a dependent status. However the wife's contribution to the husband's career entitles her to share at least to some extent in the reasonable expectation of his enhanced earning capacity derived from the marriage. I would award her $200 per month until support payments for the eldest child are terminated and $300 per month thereafter.

My principal concern with the majority opinion is the provision automatically terminating spousal support upon the wife's remarriage. While it is common practice to make such provision, the practice is a hangover from the antiquated legal principle that the wife is a ward of the husband and the wardship terminates on her remarriage. The modern justification for spousal support enunciated in *Kitson* is that either spouse may be entitled to financial assistance from the other because his or her contribution to the

marriage required a work effort and the development of non-marketable skills and the consequent forebearance of development of those skills which are income producing. It does not rationally follow that a party's need for financial assistance will automatically terminate upon remarriage.

Remarriage should be viewed as a change of circumstances warranting reconsideration by way of a motion to modify spousal support. In most cases termination would be appropriate if the supported spouse can look to the new spouse for economic assistance. But there are also circumstances where the support should be allowed to continue. Permanent spousal support is typically awarded to the homemaker wife of a long-term marriage. She may remarry a person who because of age or infirmity is unable to provide her support. On occasion, spousal support also is awarded to adjust property interests and automatic termination in such cases is wholly inappropriate. *See McCoy and McCoy,* 28 Or App 919, 562 P2d 207 (decided March 28, 1977). In the instant case the award should at least give some recognition to the wife's intangible property interests in the husband's earning capacity.

Automatic termination of spousal support upon remarriage treats the parties in an unequal manner. The husband leaves the marriage free to marry anyone. The wife must seek someone who can provide her support. Under the automatic termination rule the wife would be well advised to seek cohabitation in lieu of remarriage and thus she would not automatically lose spousal support. This court has consistently held that cohabitation is a change of circumstances, but the wife does not lose spousal support unless her financial circumstances have changed

*Vann and Vann,* 24 Or App 31, 544 P2d 175, Sup Ct *review denied* (1976); *Vaughn and Vaughn,* 25 Or App 655, 550 P2d 1243 (1976); *Bainer and Bainer,* 27 Or

[ 884 ]

App 703, 556 P2d 1377 (1976). The same principle should apply to remarriage.

The fallacy of automatic termination of spousal support is best illustrated by this court's decision in *Reed v. Reed,* 12 Or App 371, 507 P2d 55 (1973), wherein the former husband sought by way of motion for modification to terminate alimony of $100 per month on the ground that the wife had remarried. The original decree was silent as to whether alimony would terminate on remarriage. On appeal of denial of husband's motion this court "inferred" that in all probability $25 of the $100 per month was compensation for a property settlement but reached no definitive conclusion on this issue. The court stated:

> "Even if the 'alimony' here was solely for plaintiff's support and maintenance, we feel the trial court correctly denied defendant's motion seeking modification.
>
> " 'The remarriage of a divorced wife does not *ipso facto* cancel the obligation to pay the installments of alimony awarded her by the decree * * *. Nevertheless, it is such a change in the situation of the parties as to furnish the court a cogent reason for modifying the decree * * *. It would not be good public policy to compel a divorced husband to support his former wife after she had remarried, except under extraordinary conditions which she should be required to prove * * *.' *Nelson v. Nelson,* supra, 181 Or at 499 [182 P2d 416 (1947)].
>
> "See also, *Warrington v. Warrington,* 160 Or 77, 83 P2d 479 (1938); *Phy v. Phy, supra* [116 Or 31, 236 P 751, 240 P 237 (1925)]; *Brandt v. Brandt,* 40 Or 477, 67 P 508 (1902)."

We affirmed the lower court because the wife's earnings were meager and the remarriage had lasted only one month. It was fortunate for the wife in *Reed* that the decree either intentionally or by inadvertence did not contain a provision for automatic termination. Unfortunately the wife in the instant case will not be able to look to this court for the same degree of protection.