ELIZABETH JOHNS HARTIGAN v. JOHN A. HARTIGAN.[1]

January 23, 1920.

No. 21,672.

**Divorce — alimony after second marriage — public policy.**
Where a divorce decree provides for alimony payable in instalments and the divorced wife is given no vested right therein, if it appears that

[1]Reported in 176 N. W. 180.

a second marriage was planned before the action which dissolved the first was commenced, a sound public policy demands that the court discontinue instalments of alimony accruing after the plan of remarriage is carried into effect.

After the former appeal reported in 142 Minn. 274, 171 N. W. 925, defendant made a second application to amend the judgment and decree entered in the action so that the payment of any alimony should cease as of August 31, 1915. From an order, Jelley, J., denying this motion, defendant appealed. Reversed.

*O'Brien, Young, Stone & Horn,* for appellant.

*Kerr, Fowler, Schmitt & Furber,* for respondent.

HALLAM, J.

On August 22, 1914, plaintiff commenced this action for divorce. On February 15, 1915, a divorce was granted. The judgment gave plaintiff $75 per month as permanent alimony. In August, 1915, plaintiff married Harry B. Fargo. Defendant paid alimony up to the time of this marriage and then stopped. No further proceedings were had for three years, when defendant made application to have the judgment modified so as to relieve him of payment of instalments of alimony accruing subsequent to plaintiff's marriage to Fargo. The trial court modified the judgment so as to relieve defendant, only from payments accruing after date of the application to the court. Defendant appealed, and the order was affirmed. Hartigan v. Hartigan, 142 Minn. 274, 171 N. W. 925. In disposing of that appeal this court held that the remarriage of plaintiff did not, as a matter of law, terminate plaintiff's right to further instalments of alimony, that an application for modification of a decree for alimony presents an issue for the court to determine, and one which calls for the exercise of judicial discretion. This court permitted a renewal of the application. Another application was made and denied, and defendant again appeals.

We approach the consideration of this appeal, recognizing the fact that the divorce was granted to plaintiff for the fault of defendant, and recognizing the further fact that the former decision is the law of the case and that, unless this application presents some new ground for action, then it must be denied.

We are of the opinion that this application does present a situation radically different from the former one.

Defendant, in his affidavit, states that a former action for divorce was commenced November 3, 1913; that, for a long time prior thereto, plaintiff and Mr. Fargo had associated together and it was understood between them that, should plaintiff obtain a divorce from defendant, she and Fargo would marry. In answer to this, Mr. Fargo, with amazing frankness, disclosed, by affidavit, this state of facts: He had known plaintiff since childhood. He had married another and the two families lived as neighbors. The Hartigans did not get along well, but they continued to live together with their children. In August, 1913, the first Mrs. Fargo died. Plaintiff immediately went into his home and assisted him in the necessary breaking up. In the next month, September, defendant went to Fargo to talk of his family troubles. Fargo told him he thought defendant himself was to blame. Defendant, himself, apparently came to realization of that fact, and said he would go back home and make a fresh start, and he did go back. Within a very short time Fargo assisted plaintiff to move with her effects from her family home, and then for a period of three months, commencing within two months after the death of his own wife Fargo was "continuously" in the society of defendant's wife and he confesses that a "long existing friendship for her ripened into love," and that, in anticipation of the "successful" termination of her divorce action, he hoped to marry her. It was during this period that the first action for divorce was commenced, and during this period defendant commenced action against Fargo for alienation of his wife's affections. Notwithstanding all this, defendant prevailed upon plaintiff to meet him, and affected a reconciliation, dismissed "with prejudice" his suit for alienation against Fargo and plaintiff dismissed her suit for divorce. Very soon after the alienation suit was irrevocably disposed of, Mrs. Hartigan again left her husband, began this second action for divorce, procured a decree and, as soon as the law would allow it, Fargo realized his "hope" of marrying plaintiff. Plaintiff, in an affidavit, states that the affidavit of Mr. Fargo is true with one unimportant modification.

None of these facts appeared on the former application or on the former appeal.

The power of the court under our statute, G. S. 1913, § 7129, to revise

or alter a decree for alimony is very broad. If there be cases where provision for payment of alimony payable in instalments, gives the wife vested rights which the court cannot, under the authority of this section, revise, the trial court was clearly of the opinion that this was not such a case, for the court did revise the decree, and, in a memorandum attached to the order here appealed from, expressly stated that the amendatory order was not made or based upon the theory that plaintiff had a vested right to accrued alimony. There is nothing in the record before us to make it appear that in this respect the court was wrong.

We think the court should have terminated the alimony as of the date of plaintiff's remarriage. While remarriage does not, in and of itself, as a matter of law, require a modification of a decree which calls for monthly instalments of alimony, still it is in ordinary cases a very powerful argument in favor of a modification. It is impossible to separate the interest of the divorced wife from that of her second husband. A payment to her must, of necessity, redound to the benefit of both. We are of the opinion that, where the second marriage is planned before the action which dissolves the first is commenced, a sound public policy demands that the court discontinue instalments of alimony accruing after the plan of remarriage has been carried into effect.

If this motion had been made expeditiously, probably no one would have doubted the correctness of this conclusion. The trial court apparently predicated his denial of relief on the ground of delay in making the application. We are of the opinion that the delay in making the application, no particular prejudice appearing, does not outweigh the cogent reasons for modification of this decree as asked by defendant.

The order appealed from is reversed with direction to proceed in accordance with this opinion.

Reversed.