269 P.2d 284

**AUSTAD   v.   AUSTAD.**

No. 8068.

Supreme Court of Utah.

April 13, 1954.

Wilson & Wilson, Ogden, for appellant.

Max D. Lamph, Lawrence Roland Anderson, Ogden, for respondent.

CROCKETT, Justice.

This appeal is from a judgment in proceedings supplemental to divorce. The trial court found the issues generally in favor of the defendant: Refused to find him in contempt; found that he had substantially complied with the divorce decree; set aside the requirement as to alimony as of the date of the defendant's petition; awarded him custody of the remaining

minor children; and entered judgment in favor of the plaintiff for $670, which was only a small portion of the amount she sought.

Plaintiff contends that the trial court erred in the following respects:

1. Giving judgment for only $670 unpaid alimony and support money.

2. Receiving evidence outside of court.

3. Granting custody of children to the defendant.

4. Failing to find defendant in contempt and in not refusing to accord him consideration before the court until he purged himself thereof.

5. Failing to award adequate attorney's fees to her counsel.

■ As against the plaintiff's attack, we view the evidence in the light most favorable to the defendant. The original decree of divorce was entered October 8, 1945; it awarded the plaintiff custody of the four children, ages one to ten years, and required defendant to pay $125. per month for the plaintiff and the children. Shortly thereafter the plaintiff moved to California, taking the children with her. About a year later she married a man by the name of Alexander, which fact she attempted to conceal from defendant, cautioning the children not to tell him. The marriage was short lived, being terminated by divorce in Nevada, July 28, 1948. Shortly after hearing of plaintiff's marriage, defendant went to California to see her and the children. Upon being confronted with the fact of her remarriage she told defendant, "I don't want a thing from you, you take care of the children."

The plaintiff has permitted the children to be shuttled back and forth between her home and the defendant's. They have lived with their father the larger portion of the time since the divorce, and actually most of the time since 1947. Plaintiff permitted this condition to continue, making no demands upon defendant for alimony until this proceeding was commenced in October, 1951, more than five years after her remarriage. In this proceeding, she sought return of the children who had been living with their father, and a judgment for several thousand dollars back alimony and support money. On direct examination she denied having received any payment except through the Weber County Clerk, but on cross-examination, confronted with checks bearing her endorsement, she was obliged to admit receiving a total of 33 such checks.

Contrasted to this, the defendant has maintained somewhat more than usual fatherly concern for his children. In addition to the fact that he had the children the major portion of the time, his evidence was that he made the payments up to the time of plaintiff's remarriage; that after she told him she wanted nothing more for herself, he paid $25 per month for each child when one or more were with her, but admits that he paid no further alimony, and relying on her statement, did not peti-

52

tion to have the alimony terminated as it would have been his right to do. In view of the fact that he is awarded the continued custody and care of the remaining children, the oldest having married in 1950, it is plain that the imposition of a large judgment against him would substantially detract from his ability to provide for their current needs.

It is the plaintiff's position that the $670. judgment in her favor is far too low no matter what method of calculation is used; that assuming the children were to receive $25 each, (the basis upon which defendant says he paid) and that plaintiff was entitled to only $25 of the $125 per month, she would be absolutely entitled to the total of $25 per month for the time the defendant admits alimony was not paid, that is, from the date of her remarriage in 1946 until this proceeding was brought in 1951, a total of 60 months, which simple arithmetic shows would amount to $1,500.

We are thus confronted with the problem as to whether, where the equities weigh heavily against the wife and in favor of the husband, it is nevertheless mandatory on the court to enter judgment for the full amount of alimony installments which have accrued after the wife's marriage to another man.

The plaintiff bases her claim on the case of Myers v. Myers [1] in which this court stated, inter alia, (a) that a judgment for alimony does not automatically terminate upon the remarriage of the wife, and (b) that the right to accrued alimony is vested and may not be defeated by a subsequent order of court eliminating alimony back to the date of remarriage. In this case we will be concerned only with segment (a) just referred to, which will be hereinafter referred to as the Myers case rule. Inasmuch as this rule, as it would apply in the instant case, seems strangely dissonant from the rules of equity and good conscience which apply generally to matters involving divorce and domestic problems attendant thereupon, it appears meet to make critical inquiry concerning it. This we do in two phases: First as to where it came from and how it got into our law; and second, as to what its actual status in the law of our State is.

The Myers case cites, as authority for the rule therein announced, the case of McGill v. McGill,[2] and the authorities which are referred to in that case. In the McGill case the Supreme Court of Kansas said: *"Whatever may be thought, or should be thought, about the policy or propriety of requiring a divorced husband to continue payments of alimony to a wife remarried to another man, the authorities are preponderant in support of the doctrine* that her remarriage does not of itself operate as a release of the obligation, although it may well be a ground of application for discharging the defendant from further payments." (Emphasis added.) An exam-

1. 62 Utah 90, 218 P. 123, 30 A.L.R. 74.

2. 101 Kan. 324, 166 P. 501, 503.

ination of the encyclopedias and annotations which are cited to support this statement, 14 Cyc. 878; 1 R.C.L. 950; 2 A. & E. Ency., 2d Ed., 138; note, 11 Ann.Cas. 523, and the cases upon which they base the statement, Shepherd v. Shepherd, 1 Hun 240, affirmed, 58 N.Y. 644; Brandt v. Brandt, 40 Or. 477, 67 P. 508; King v. King, 38 Ohio St. 370, shows that the judicial decisions are not so "preponderant" in favor of this rule as the Kansas Court assumed.

Of the three cases just referred to, only that of Shepherd v. Shepherd, supra, can actually be said to stand for the proposition that a wife does not lose her right to alimony on remarriage. In Brandt v. Brandt, supra, the Supreme Court of Oregon did not decide whether alimony automatically terminates when the wife marries, but ruled that inasmuch as the parties were before the court, the alimony was retrospectively terminated as of the date of the remarriage. This achieved the same result as if there were automatic termination.

The case of King v. King, supra, is important to the problem we are considering. It seems to present the real situation from which the rule originated. There the award was for a lump sum of $1,000 as permanent alimony, payable in monthly installments. It was held that remarriage did not cut off the wife's right to receive the full amount of the award even though some of the installments remained to be paid after the subsequent marriage. This rule is perfectly sound and logical when applied to the facts in the King case, but the error apparently has come about in applying it where the award was not for a lump sum, but merely for indefinite current support. The clear distinction which obviously exists between these two situations has received judicial recognition. The courts of Illinois[3] and Georgia[4] hold that where the alimony is in a lump sum payable in installments there is no automatic termination on the wife's remarriage; and that this creates an absolute right to the amount so awarded, but indicate that where the alimony is strictly for the current support of the wife, without limit as to the total amount or the number of installments, remarriage of the wife automatically ends her right to such alimony. This distinction is also suggested in the Oklahoma case of Gilcrease v. Gilcrease.[5]

A survey of decisions which have dealt with this problem indicate that, even though the view expressed in the Myers case is sometimes given lip service as being the general rule, there is actually no pre-

3. Dobson v. Dobson, 320 Ill.App. 687, 51 N.E.2d 1010; Morgan v. Lowman, 80 Ill.App. 557.

4. Green v. Starling, 203 Ga. 10, 45 S.E.2d 188; White v. Murden, 190 Ga. 536, 9 S. E.2d 745.

5. Gilcrease v. Gilcrease, 186 Okl. 451, 98 P.2d 906, 127 A.L.R. 735.

ponderance of authority supporting it.[6] In addition to the case of McGill v. McGill and the authorities therein cited, hereinabove referred to, it has been announced in the jurisdictions of Missouri [7] and New Jersey,[8] but certain other authorities which have been referred to as in accord with the Myer's rule, are not so in fact. In Phy v. Phy. (Or.),[9] Morgan v. Morgan (Ala.),[10] Heston v. Odlin (Wash.),[11] and Mindlin v. Mindlin (N.M.),[12] the courts were only faced with the problem of prospective modification; there was no question as to alimony accruing after the remarriage of the wife.

In some of the few jurisdictions wherein the rule has been announced, recognition of its unsoundness has been manifest by the fact that the legislatures have seen fit to abrogate it. In New York [13] and New Jersey,[14] after the Shepherd and Cropsey cases respectively, statutes were passed providing that upon application of the husband, it is mandatory on the court to terminate all alimony subsequent to the wife's remarriage. And in California, where retroactive elimination of alimony was permitted upon petition, by statute, petitioning is now unnecessary, and remarriage of the wife automatically terminates her right to alimony.[15]

On the other hand, the following jurisdictions hold that remarriage automatically terminates any right to alimony: Mississippi,[16] Arkansas,[17] Illinois,[18] Maryland,[19] Kentucky,[20] and Georgia.[21] Also to be classified with this latter group, so far as result is concerned, are the jurisdictions which hold that after the wife's remarriage, the court, upon proper petition, may retroactively eliminate the alimony back to the date of the marriage: Minnesota, [22] Ore-

6. See cases collated in 30 A.L.R. 81; 42 A.L.R. 602; 64 A.L.R. 1273; 112 A.L.R. 253; 6 A.L.R.2d 1296.

7. Nelson v. Nelson, 282 Mo. 412, 221 S. W. 1066.

8. Cropsey v. Cropsey, 104 N.J.Eq. 187, 144 A. 621, 64 A.L.R. 1266.

9. 116 Or. 31, 236 P. 751, 240 P. 237, 42 A.L.R. 588.

10. 203 Ala. 516, 84 So. 754.

11. 125 Wash. 477, 216 P. 845.

12. 41 N.M. 155, 66 P.2d 260.

13. Civil Practice Act, § 1159, Gilbert's Civil Practice 1922, as amended Laws of N. Y. 1934, C. 220, p. 703 now § 1172-c. See Kirkbride v. Van Note, 275 N.Y. 244, 9 N.E.2d 852, 112 A.L.R. 243.

14. Laws of N. J. 1933, c. 145, par. 1, p. 296, N.J.S.A. 2A:34–23, 25. See Madden v. Madden, 136 N.J.Eq. 132, 40 A.2d 611.

15. Cal.Civ.Code (Deering 1949) § 139. See Stucker v. Katz, 92 Cal.App.2d 843, 207 P.2d 879.

16. Sides v. Pittman, 167 Miss. 751, 150 So. 211.

17. Bowman v. Worthington, 24 Ark. 522.

18. Morgan v. Lowman, 80 Ill.App. 557.

19. Knabe v. Knabe, 176 Md. 606, 6 A.2d 366, 124 A.L.R. 1317.

20. Montgomery v. Offutt, 136 Ky. 157, 123 S.W. 676.

21. White v. Murden, 190 Ga. 536, 9 S.E.2d 745.

22. Hartigan v. Hartigan, 145 Minn. 27, 176 N.W. 180.

gon,[23] Michigan,[24] Connecticut,[25] Massachusetts,[26] South Dakota,[27] Idaho,[28] and Maine.[29]

One is hard pressed to find any rational basis to support the view that remarriage does not terminate the obligation of the former husband to pay alimony. As a matter of fact, the cases supporting it are often apologetic, placing the blame upon "precedent" or erroneously assuming that the weight of authority supports it, a good example of which is shown by the emphasized language from the McGill case hereinabove quoted. The Shepherd case, supra, reasoned that because the right to alimony is strictly statutory, and as the statute says nothing about remarriage terminating it, the court cannot read into it the condition that the wife is only entitled to alimony as long as she remains unmarried. Another justification of the rule is based upon the rationale that the statute which provides that "any order for the payment of money has the force and effect of a judgment" makes the accrued payments absolute and indefeasible.

Neither of those ideas really goes to the heart of the problem with which the court is dealing: The necessity of the wife to receive alimony and the duty of the husband to pay it. During coverture the husband voluntarily, or as an obligation incidental to the marital status, provides for the wife's support, after divorce the alimony is provided as a social necessity as a substitute for such support. It seems quite incongruous that such substitute should continue after she has married to another, who has assumed such burden, and thus give the wife the double right to support by receiving it from two individuals.

The foregoing reasoning has been accepted as persuasive whenever courts have given any consideration to the social and legal aspects of the problem, as is pretty well epitomized by the text writer in 17 Am.Jur. 475: " * * * it is illogical and unreasonable that she (the wife) should have the equivalent of an obligation for support by way of alimony from a former husband, and an obligation from a present husband for an adequate support at the same time. It is her privilege to abandon the provision made by the decree of the court for her support under sanction of the law, for another provision for maintenance which she would obtain by a second marriage, and when she has done so the law will require her to abide by her

23. Brandt v. Brandt, 40 Or. 477, 67 P. 508.

24. Herman v. Wayne Circuit Judge, 236 Mich. 604, 211 N.W. 52.

25. Cary v. Cary, 112 Conn. 256, 152 A. 302.

26. Watts v. Watts, 314 Mass. 129, 49 N.E. 2d 609.

27. Wenzel v. Wenzel, 67 S.D. 537, 295 N. W. 493.

28. McHan v. McHan, 59 Idaho 496, 84 P.2d 984.

29. Bubar v. Plant, 141 Me. 407, 44 A.2d 732.

election * * *." That the judicial decisions adopt this view is illustrated by the statements from the Supreme Court of Oregon in the case of Brandt v. Brandt, supra, that after the wife had remarried, "* * * there are no considerations of right or equity that would require him [the former husband] to again assume the obligation" of supporting his former wife; and as simply and aptly put in the case of Sides v. Pittman, supra, "* * * it is contrary to the principles of justice to require a former husband to support the wife of a later husband."

From an examination of a great number of authorities on this subject it seems fair to state that the preponderance of them, particularly in the later cases, hold that alimony automatically terminates upon remarriage, contrary to the Myers case rule. And this seems to us to be the sounder view, not only upon the basis of the weight of authority, but upon the better reasoning. We then turn to an analysis of the status which the contrary rule as introduced in the Myers case has in the law of our own state.

In the Myers case itself, from which the doctrine keys into our law, the opinion affirmatively recites that the later marriage occurred three months and 24 days before the interlocutory period was up, thus indicating that there was in fact no valid subsequent marriage.[30] It follows that what was said in that case about alimony continuing after remarriage is actually but dicta. Nevertheless, the rule therein stated has been referred to in several subsequent Utah decisions, which we refer to briefly to show what this court has done with respect thereto.

The closest thing we have to a square holding that alimony continues after remarriage of a wife is in Marks v. Marks.[31] The divorced wife remarried November 9, 1935. On November 18 the husband filed a petition for modification of the decree. Pursuant to stipulation of the parties the court terminated the alimony after December. No appeal was taken. In a later proceeding the wife petitioned the court for a judgment of amounts accrued under the decree; she was awarded arrears of alimony for the months of November and December. This was affirmed on appeal. The court stated that under the decision of the Myers case, the judgment for the November installment must stand because it had accrued before the petition to modify was filed; and the December payment stood because no appeal was taken from the order allowing it. This latter reasoning applies and was controlling as to the November installment also and very well could have been the basis of the court's decision in that regard. It would have been the correct conclusion with respect to

30. Sanders v. Industrial Comm., 64 Utah 372, 230 P. 1026.

31. 98 Utah 400, 100 P.2d 207.

the November payment without reference to whether the court could have eliminated it.

In Rockwood v. Rockwood,[32] it was contended that support money to the children should be terminated because their mother had remarried. The court cited the Myers decision and said: "If the remarriage of a divorced wife does not as a matter of law relieve the former husband from the obligation to pay alimony decreed to her, a fortiori it should not as matter of law relieve him from the payments decreed for the support of the children." However, as the court there said, the considerations are different where the support of the children is involved than where it is only a question of alimony to the wife. No alimony was awarded in the Rockwood case and it cannot be construed as holding that alimony continues after remarriage of the wife. Nor can Cole v. Cole[33] or Openshaw v. Openshaw.[34] In these cases the wife had not remarried; the Myers case was cited only for the proposition that installments of alimony become vested and the court had no power to modify the decree as to them, with which problem we are not here concerned.

As is indicated by the foregoing, insofar as we have been able to discover, there is no case in this jurisdiction in which the imposition of a judgment for alimony, accruing after remarriage of the wife, is actually and necessarily based upon the proposition that alimony does not terminate upon remarriage of the wife. And it seems unquestionable that we have no precedent which would make mandatory any such result in the face of strong equitable considerations against it, such as obviously exist in the instant case.

■ It is also suggested that the Myer's case rule having been announced as the law of this state since 1923, any change should be made by the Legislature as was done in New York and New Jersey. The doctrine of stare decisis is ingrained in our law and is entitled to serious consideration. The reason underlying it is that people should know what their legal rights are as defined by judicial precedent, and having conducted their affairs in reliance on such rights, ought not to have them swept away by judicial fiat. As we said in Allen v. Board of Education,[35] "where the earlier opinion announced and applied a rule fixing the status of property or affecting title thereto, or where the law laid down in such decisions has apparently entered into the general life of the people and it is fair to assume that contracts and other relationships have been entered into on the faith of the announced rule, the doctrine should apply in all its vigour and it should be left

32. 65 Utah 261, 236 P. 457, 459.

33. 101 Utah 355, 122 P.2d 201.

34. 102 Utah 22, 126 P.2d 1068, and 105 Utah 574, 144 P.2d 528.

35. Utah, 236 P.2d 756, 763.

to the Legislature to correct whatever future ill might be thought the result of the announced rule."

The rule in question is not such that it comes within any of these categories and to hold as we are doing will not thwart any of the purposes for which the doctrine of stare decisis was developed. We see no reason why anyone should be in a position of having acquired rights in reliance upon such being the law so that it would now be unjust to deprive her of those rights. Notwithstanding this, we remain fully aware that the court should not lightly or without grave cause change the course of the law. However, where no rights which have been acquired in reliance on a proposition of law will be vitally affected, the doctrine of stare decisis should not be the cause of compelling the perpetuation of error.

In the case of Salt Lake City v. Industrial Commission,[36] in overruling a long line of prior decisions, Mr. Chief Justice Wolfe, speaking for this court, stated: "In this regard we think the opinion in that case [Utah Consol. Mining Co. v. Industrial Comm., 57 Utah 279, 194 P. 657, 16 A.L.R. 458] and the cases which followed it were in error. Since it did not involve a rule of property on which rights were acquired and maintained, we think the error should at this time be rectified." Thus when it plainly appears that error exists we should not hesitate to correct it. And this is true a fortiori where as here, the Myers rule cannot be said to have any firm footing in our law.

It appearing that the Myers rule has very little foundation in the decisions of the courts of our sister states, of our own state, or in reason, to induce us to adhere to it we conclude that notwithstanding what has been said in earlier cases, there is implicit in the divorce decree the provision that the alimony continues only so long as the wife remains unmarried. Accordingly the alimony awarded plaintiff terminated upon her remarriage, and she is in no position to complain of the amount of the judgment she received.

In reaching this decision we are not to be understood as holding that the same result would eventuate where a sum of alimony was decreed in lieu of dower, or in settlement of property rights acquired by the wife,[37] or where the alimony is awarded in a lump sum payable in installments.[38] And we further observe that under some exceptional circumstances this result might be so unconscionable or inequitable that the court, under its equitable powers would decree that the wife does not lose her right to alimony upon remarriage. In such instance the burden would be upon the wife to prove those facts.[39]

36. 93 Utah 510, 74 P.2d 657, 658.

37. Nelson v. Nelson, 181 Or. 494, 182 P. 2d 416. See 30 A.L.R. 89; 64 A.L.R. 1275; 112 A.L.R. 257.

38. See Green v. Starling, supra; Dobson v. Dobson, supra.

39. See Cary v. Cary, supra.

The receiving evidence outside of court complained of, related to two matters: (a) Talking privately with the children, over 10 years of age, concerning their preference as to which parent they wanted to live with and (b) In taking a report from the juvenile authorities.

■ (a) Plaintiff does not question the propriety of the judge learning the preference of the children, nor of taking it into consideration in the award as to their custody,[40] but finds fault with his talking to them alone in chambers and then announcing the result of these conferences in open court. It can readily be seen that embarrassment and serious emotional problems might arise from compelling children to express such preference in the presence of their father and mother, or in a formal court proceeding. Such matters are often fraught with considerable delicacy and it is perhaps best that the trial judge should not feel confined in any straight-jacket as to procedure. He is not involved in the emotional stress that often possesses the parties and he can tell best how that matter should be handled. The desirable way is for the parties to stipulate as to how the court may do it, and such is the usual procedure. If counsel desire to be present, the privilege should be accorded unless some compelling reason to the contrary exists. In the instant case the court apparently did not advise counsel in advance and

give him the opportunity to make any choice about it. Despite this irregularity, no claim is made, and there is no reason to suspect, that the children were improperly influenced, or that the selection indicated was not correct. If such had been the case, the matter should have been called to the attention of the court, affording an opportunity to take affirmative steps to correct it.

■ (b) Plaintiff further asserts that rule 43(a), U.R.C.P., providing, "In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules" was violated by Judge Hendricks' asking the juvenile authorities to investigate the homes of both parties and make a report thereon. It is unquestionably true that inasmuch as the case must be decided upon the evidence, the litigants and their counsel are entitled to know what the evidence is, so they have an opportunity to cross-examine witnesses, and to meet such evidence. We have no desire to approve of any departure from the orderly process of law just mentioned, nor to encourage either the taking of evidence in secret, or the keeping of it from those whose rights are to be decided upon it.

If the judge felt that an independent investigation of the conditions in the respective homes was necessary, it would have been proper for him to have so advised counsel and had their agreement be-

40. 30-3-10, U.C.A.1953.

fore causing the investigation to be made. This was not done but we do not believe that the procedure followed resulted in prejudice to the plaintiff. First, because the substance of the report of Mrs. Berrett, the social worker assigned to the case, was made known in open court and the only request made by plaintiff's counsel was that he be given the right to cross-examine her, which was afforded him, so that it may fairly be said that his conduct was tantamount to acquiescence in the procedure. Second, the information about the homes could only have related to the placement of the children. The evidence, wholly apart from the report from the social worker, supports the wisdom of the trial judge in permitting the children to continue to reside with their father, where they had been for several years, and where they chose to continue to live. Any irregularity in the procedure does not appear to be of sufficient import to justify ordering a retrial of the issue.[41]

▆ Both the leaving of the children with defendant, and the refusal of the trial court to find defendant in contempt were, under the fact situation shown, within his prerogative. As to the charge that an award of $150. attorney's fee for plaintiff's counsel is inadequate: Since no evidence was adduced on the matter, there is no basis

upon which we could say that the trial court abused his discretion in that regard.

Judgment affirmed. Costs to respondent.

McDONOUGH, HENRIOD, and WADE, JJ., concur.

HOYT, District Judge (concurring).

I concur in the result, and generally with what is said in the opinion. But with reference to relieving defendant from payment of alimony subsequent to remarriage of the plaintiff, I base my concurrence upon the ground that the court had power to modify its previous order with respect to past-due instalment, rather than upon the ground that we should read into the statute or into the divorce decree a proviso that alimony should cease upon remarriage of plaintiff. I think a reconsideration of the doctrine announced in the case of Myers v. Myers has been long overdue, but I think we should not now adopt a halfway course, and, by silence or otherwise, appear to give approval to the doctrine that the court has no power, under any circumstances, to change or modify retrospectively a decree requiring payment of alimony. The statute relating to divorce, Sec. 30–3–5, U.C.A.1953, provides that "the court may make such orders in relation to the children, property and

41. Startin v. Madsen, Utah, 237 P.2d 834; U.R.C.P. 61.

parties and the maintenance of the parties and children, as may be equitable". Also, that "Such subsequent changes or new orders may be made by the court with respect to the disposal of the children or the distribution of property as shall be reasonable and proper." In Buzzo v. Buzzo, 45 Utah 625, 148 P. 362, 363, in allowing a modification of a decree relating to alimony, this court said: "We are of the opinion, however, that every decree of divorce and alimony must be deemed to have been entered subject to the provisions of section 1212 [now 30-3-5], supra. All courts agree that, if it is provided in the decree itself that it may be modified or revised in case the circumstances and conditions of the parties have materially changed, the modification may then be made. Now, we think that under statutes like ours the provision therein contained, authorizing a change or modification, *is as much a part of the decree as though it were written into it*." (Emphasis added.) That case did not deal with retrospective modification, but if what is here quoted from the opinion is true, is there any good reason to believe that it should not apply in case of an application for relief from past-due instalments, where by reason of substantial change of circumstances it would be inequitable to compel payment? Certainly it is unjust to compel a husband to continue to support a divorced wife who has remarried and has adequate support from another husband. But other situations also come before the courts where it is inequitable to compel a divorced husband to pay accrued instalments of alimony or of money for support of children in accordance with the terms of a divorce decree. If a divorced wife, who has been awarded custody of children and an allowance from the husband for their support, thereafter deserts the children and they are taken over and cared for by the husband, it is clearly desirable and equitable to relieve him of payment of support money from the date of such desertion. Why should it be held that the court has no *power* to do equity in such a situation? If it so happens, *as it very often does*, that the divorced husband fails to apply promptly to the court for modification of the decree, shall we say that he must therefore pay the instalments ordered to be paid up to the date of the order of modification, or, as some courts have said, up to the date of his application for modification? Should the court put such a penalty on lack of vigilance? I believe not.

I believe that the statute should be taken according to its terms, and that the courts should not renounce nor abrogate the powers plainly intended to be conferred by it nor the inherent powers of courts of equity to meet situations in accordance with the demands of justice and good conscience.

It should be remembered that a high percentage of divorce cases are not contested and that decrees are written without the

careful consideration and scrutiny which obtains in cases where both parties are represented by counsel. Very often the amount of alimony or support money ordered to be paid is based upon erroneous or false assumptions of the wife or her attorney as to the income or earning capacity of the husband, and without any serious expectation of collecting in full. Ofttimes, as every trial judge knows, months or years elapse without any serious attempt to enforce payment. Sometimes the wife remarries. Sometimes the children are shifted to the husband for care and support. Sometimes there is an understanding or agreement that alimony may cease, in consideration of the children being cared for by the husband. Sometimes the husband, because of illness or poverty, is entirely incapable of meeting the requirements of the decree. Ofttimes, regardless of change of circumstances or incapacity of the husband, there is no application to the court for modification of the decree. Then, if the husband remarries, the former wife sometimes resents it and seizes the opportunity to use the decree and the accumulation of unpaid instalments as a means of harassment. Occasionally after the death of the wife her heirs or representatives attempt to collect on the judgment. So too, after the death of the husband, claim is sometimes made against his estate. Shall we say in such situations that no matter what changes of circumstances have occurred, the court has no power to relieve from the accrued instalments?

But it is argued that a decree directing payment of alimony or support money becomes a judgment and that the court cannot annul a judgment or destroy vested right. Rule 7(b) (2) of the Rules of Civil Procedure (formerly Sec. 104–42–5 of the Civil Code) is cited to the effect that "an order for the payment of money may be enforced by execution in the same manner as if it were a judgment."

Answering such argument, it is obvious that difficulties will arise if orders for future payments of alimony or support money are to be looked upon as automatically becoming judgments for the respective instalments upon arrival of the dates fixed for payment. Many divorce decrees do not require payments of alimony or support money to be made to the clerk. He will therefore have no record as to payment. Also, though payments are ordered to be made to the clerk, the parties frequently arrange for payment to be made directly to the divorced wife. Clerks therefore do not—or should not—issue execution until a judgment has been rendered by the court, establishing the amount of unpaid and accrued alimony or support money. Furthermore, arrangements are frequently made between divorced persons (as was done in this case) for shifting of custody of children, with the understanding or agreement that while the husband is supporting the children he will be excused from payment

to the wife of allowance made for support of such children. Having in mind these considerations it seems clear that an award made in a divorce decree for future support, either of the divorced wife or the children of the parties, ought not to be looked upon as a *judgment upon which execution should issue* until there has been a judicial ascertainment of the amount accrued and owing. Some states have statutes, it seems, permitting execution to issue upon presentation of an affidavit as to the amount of alimony or support money accrued and unpaid. See Taylor v. Stowe, 218 Mass. 248, 105 N.E. 890. Utah has no such statutes nor any statute prescribing any special procedure in connection with issuance of execution under decrees providing for instalments of alimony or support money. It therefore appears proper to require application to the court for a judicial determination of the amount accrued and unpaid before the clerk issues execution. The opinion of this court in Beesley v. Badger, 66 Utah 194, 240 P. 458, appears to me to support this view.

A further consideration for believing that we should not say that alimony ipso facto ceases upon remarriage of the divorced wife, is that in some circumstances that will not be just or equitable. Alimony is sometimes awarded as a part of a property settlement—with the intention that it shall continue throughout the life of the wife. If it is granted upon consideration of property received by the husband it should not be treated the same as if it had been awarded in consideration of the duty of support owed by a husband to the wife. Also, other circumstances may arise wherein it will not be equitable to relieve the husband from the payment of alimony despite the remarriage of the wife. The divorced husband may be a man of great wealth and while the divorced wife remains unmarried she may be receiving a considerable award of alimony. If she marries a man who has little or no income she may be deprived of support to which she is equitably entitled to receive from the first partner. It therefore seems to me better to leave it to the discretion of the court to act in each case in accordance with justice and equity than to adopt a rule as the Myers case does which robs the court of that power. If a trial court in a given case errs in the *exercise* of the power, there is a right of appeal. But, if this court declares that the trial courts have no power in any circumstances to cancel past-due instalments of alimony or support money, there is then no right of appeal—regardless of hardship or injustice in a particular case. It is well said by the Supreme Court of Maryland in Winkel v. Winkel, 1940, 178 Md. 489, 15 A.2d 914, 919, "The reasons in support of the modification of future instalments of alimony are only less in degree in reference to the instalments which have accrued due. There may have been error in the amount fixed because of mistake in the husband's facul-

ties. The capacity to pay may be materially reduced either by unforeseen diminution in estate or of failure in earnings through incapacity, loss of position or of employment. When the failure to pay is attributable to such a cause, it is equitable to make a conformable modification in alimony which has accrued due. To deny a court of chancery such a power prevents the rectification of an obligation which would not have been created had the chancellor been able to anticipate the later faculties of the husband, and defeats the rule that the maintenance afforded the separated wife through alimony is not to be greater than what she would have enjoyed in cohabitation. On reason the power of the court of equity to adapt its remedial relief to existing conditions and circumstances should not be curtailed. The flexible quality of its procedure is oppressively limited by the denial of redress for the chancellor's unforeseeably mistaken estimate of future faculties which the husband, without fault on his part, has not possessed in such a measure as to enable him to comply with the payment of the alimony imposed."

It is true that, in a number of states it has been held, that under their particular statutes, power to cancel accrued instalments of alimony or support money has not been conferred. See annotation in 6 A.L.R.2d at page 1284. But in a considerable number of other jurisdictions such power has been held to exist. Id., at page 1283. In the same annotation at page 1289 it is pointed out that "The decision in Sistare v. Sistare, 1910, 218 U.S. 1, 30 S.Ct. 682, 686, 54 L.Ed. 905, 28 L.R.A.,N.S., 1068, may be guilty of 'undue influence' upon decisions of other courts. It said that a statute authorizing a court to 'vary or modify' a judgment for alimony did not expressly authorize the cancelation of arrears and that the court must resort to every reasonable implication against the existence of such a power. Many state decisions have cited and followed it almost as though it announced a principle of constitutional law. However, this case merely involved the construction of a New York statute, and the New York courts do not accept that construction, so that the Sistare case is incorrect so far as New York lawyers are concerned, and it may be incorrect as a general pronouncement of principles of statutory construction." This comment is particularly pertinent to the study of the question here under discussion, since this court, in its decision in Myers v. Myers, relied very largely upon the opinion in Sistare v. Sistare. It should also be noted that in Sistare v. Sistare, the United States Supreme Court was considering whether a decree for alimony to be paid in future instalments is a debt of record and as such protected by the full faith and credit clause of the U. S. Constitution, and that in discussing this it said: "This general rule [that alimony is a debt of record the same as an ordinary

money judgment], however, does not obtain where, by the law of the state in which a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the instalments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the instalments becoming due." That statement clearly shows that the Federal Supreme Court recognized the fact that the power of the divorce court to remit or cancel accrued instalments of alimony depend upon state law and not upon any Federal constitutional provision.

I believe that it is wrong, under a statute such as ours, which permits change or modification as to alimony or support money, to consider that alimony awarded for future support of a divorced wife, (not given in consideration of a property settlement) becomes a debt of record with the arrival of dates fixed for payment of the respective instalments. Experience as a trial judge convinces me that cases frequently arise where it would be inequitable to treat accrued instalments of alimony or support money, as "judgments." But if the rule is adopted that before treating accrued instalments as a judgment or debt of record, the court should, upon proper application, ascertain the amount owing and unpaid, and then enter an order or judgment for that amount, we will establish an orderly and equitable procedure instead of a system which will promote confusion and frequent injustice.

WOLFE, C. J., being disqualified, does not participate herein.