**Vera Arlene FERGUSON, Plaintiff
and Appellant,**

v.

**Lowell Gene FERGUSON, Defendant
and Respondent.**

No. 14639.

Supreme Court of Utah.

May 19, 1977.

Harold G. Christensen and Ellen Maycock, of Worsley, Snow & Christensen, Salt Lake City, for plaintiff-appellant.

Roger D. Sandack, of Sandack & Sandack, Salt Lake City, for defendant-respondent.

CROCKETT, Justice:

After annulment of her second marriage, plaintiff, Vera Arlene Ferguson, petitioned for reinstatement of alimony payments provided for in a divorce decree from her former husband, the defendant herein, which the latter had ceased to pay upon the plaintiff's second marriage. She also sought a judgment for alimony accrued since that marriage and for an increase in the amount of child support. The trial court rejected her requests relating to alimony, but granted the request for an increase in the amount of child support from $70 per month to $160 per month for each of the three children, and awarded her attorney's fees of $800.

The parties were married in Salt Lake City, Utah, on April 3, 1958, and had three children. On January 24, 1969, the plaintiff was awarded a decree of divorce, custody of the children, $150 per month alimony, and $70 per month as support for each child.

On April 11, 1974, the plaintiff married Glen Hunsaker in Salt Lake County, Utah; and since that date the defendant has made no alimony payments. Six months later, on October 18, 1974, in a default proceeding, plaintiff was granted an annulment on grounds stated to be misrepresentation as to the "financial status and character" of the defendant therein, Glen Hunsaker.

The determination made by the District Court was that the plaintiff's right to alimony had terminated upon her remarriage and that it was not reinstated by the annulment. The court also expressly found that no special circumstances existed to justify the reinstatement of alimony payments by the defendant.

■ The essential aspect of the plaintiff's argument is that when her second marriage was annulled, it should be regarded as void ab initio, as though it had never happened, and that she should revert to her former status, reviving her right to the alimony under the prior decree. She cites and relies on two prior decisions of this court, *Kent v. Kent*[1] and *Cecil v. Cecil*.[2] It is true that in each of those cases, this Court ruled that under the facts therein, upon an annulment of the subsequent marriage, the alimony provision in the prior divorce decree was revived; and there is concededly language in those decisions which gives plausibility to plaintiff's argument here. However, careful reading and consideration of those cases will reveal that the underlying and controlling principle therein is the satisfying of the requirements of equity.

In the *Kent* case, the plaintiff had in good faith entered into a "purported marriage" with another man and had lived with him for but a short time when she learned that he was still married to his former wife. Thereupon she ceased to live or cohabit with him; and it was shown that she had thus been placed in a position that is she were precluded from reclaiming alimony from her first husband, she would be without means of support. The essence of our holding was that under those circumstances it was improper to automatically so deprive her; and the case was remanded for a new trial and a further determination of what the requirements of equity demanded.

The *Cecil* case also presented a situation appealing in equity to the conscience of the court. The plaintiff's husband sought relief from obligations in a decree to pay alimony. This court, through Justice Wade, said:

Even though it be conceded that the annulment cannot be collaterally attacked, nevertheless what effect an annulment has on a divorced husband's obligation to continue alimony payments to his former wife is to be *determined by what a court could reasonably find is equitable under the facts and circumstances.*[3]

In that case, the wife had a case history of mental infirmity, and her annulment was granted on the ground that she had no mental capacity to enter into the purported second marriage. This court further said:

. . . and her attempted marriage did not adversely alter or change his circumstances so that *it would be inequitable to require him to continue his alimony payments.*[4]

It will thus be seen that those cases do not necessarily stand for the proposition that under any and all circumstances an annulment of a subsequent marriage automatically restores the obligation to pay alimony under a prior existing divorce decree. Therefore, they are not necessarily inconsistent with the holding we reach in this case as set forth below. However, it should be observed that we decide as indicated herein notwithstanding anything stated in those cases that may seem to be to the contrary.

In regard to those cases, and to other cases which have ruled that there is an automatic restoration of the alimony requirements under a prior decree, it is noteworthy that one of the principal reasons given therefore was that alimony could not then be allowed in an annulment; and that therefore the woman should be returned to her former status so she will not be left without support.[5] Apparently in recogni-

---

1. 28 Utah 2d 34, 497 P.2d 652 (1972).

2. 11 Utah 2d 155, 356 P.2d 279 (1960).

3. 356 P.2d at 280.

4. Id. at 281.

5. 55 C.J.S. Marriage § 63; 54 A.L.R.2d 1410; *Cecil v. Cecil*, supra note 2; *Middlecoff v. Middlecoff*, 171 Cal.App.2d 286, 340 P.2d 331 (1959); *Sefton v. Sefton*, 45 Cal.2d 872, 291 P.2d 439 (1955).

tion of these concerns our Legislature in 1971 enacted what is now Section 30–1–17.-2, U.C.A.1953, relating to annulments, which provides:

> If the parties have accumulated any property or acquired any obligations subsequent to the marriage, *or there is a genuine need arising from economic change of circumstances due to the marriage,* or if there are children born, or expected, *the Court may make temporary and final orders,* and subsequently modify the orders, *relating to* the parties, their property and obligations, the children and their custody and visitation, and *the support and maintenance of the parties* and children, *as may be equitable. . . .*
> [All emphasis herein is added.]

This statutory authorization to make such awards in annulment suits as equity requires removes one of the principal aspects of the reasoning in the cases which held that the annulment of a second marriage had the effect of relating back and restoring the prior decree. It seems appropriate to here recall the statement of Justice Oliver Wendell Holmes who is sometimes quoted to the effect that: "It is revolting to be told that the justification for a rule is that it was established in the rule of Henry IV; and even more so if whatever reason may have existed for the rule has long since vanished." [6]

There is another important aspect of the problem here involved. It relates to the effect any rule of automatic reinstatement of alimony obligations under the prior decree has on the first husband. The cases which have refused to so reinstate reason that, in fairness to him, he should be able to rely on the fact that his former wife has remarried; and that he is thus relieved from paying her alimony. He should then be free to plan and carry forward his own life independent of that obligation, and not left dangling upon uncertainties as to the success or failure of that second marriage,[7]

a matter over which he has no possible influence or control.

Neither should the former wife be in a position where at her whim or caprice she can choose by an annulment to re-impose the obligation of alimony payments upon the former husband. Among other undesirable aspects of that situation, there is the possibility of her engaging in collusion with the later spouse for the purpose of restoring entitlement to alimony under the prior decree. The objections to any rule of automatic restoration are emphasized by the fact that the first husband (defendant here) is not, and could not become, a party to the annulment proceeding to see that his rights are protected therein.

Also to be considered is the fact that there is a possibility of collusion reversed to that just referred to above. Assume, for example, a situation where a wife of many years had reared a family, was divorced under ever so just and proper decree awarding her alimony; and because of disability, age or for any reason was unable to make a livelihood. Assume further that a husband, motivated by animosity or avarice that sometimes exist, procures an accomplice to connive in a nefarious scheme for the accomplice to persuade the wife to marry him, with a preconceived design of getting the marriage annulled. This for the purpose of effecting the automatic termination of the husband's obligation to pay alimony. Assume that this plan is carried out. Should the wife be left an object of charity or public welfare? The possibility of unconscionable imposition and of injustice is obvious.

From what has been said above it should be apparent that if the rule should be absolute and applied with unreasoning rigidity, either that the annulment of a subsequent marriage automatically restores the alimony obligation under a prior divorce decree, or that it does not do so, circumstances may

6.  Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469 (1897).

7.  *Chavez v. Chavez,* 82 N.M. 624, 485 P.2d 735 (1971). See also *Sefton v. Sefton,* supra note 5; *Flaxman v. Flaxman,* 57 N.J. 458, 273 A.2d 567 (1971); *Evans v. Evans,* 212 So.2d 107 (Fla. App.1968); Clark, Law of Domestic Relations 458 (1968).

exist which could result in serious inequities. Some paliation in dealing with the problem confronted herein is to be found in the provisions of Sec. 30–3–5, U.C.A.1953, which gives the District Court continuing jurisdiction in divorce cases to make such "subsequent changes or new orders . . as shall be reasonable and necessary."

In view of this expressly granted continuing jurisdiction of the District Court, and on the basis of what has been said herein, it is our conclusion that it is neither necessary nor desirable, nor in conformity with our law, that there by any rule which must be regarded as absolute and to be applied with unreasoning rigidity, which either automatically restores or automatically eliminates the alimony under the prior divorce decree upon the annulment of a subsequent marriage.

■ Upon proper application to the District Court invoking its continuing jurisdiction, it should be free to proceed in conformity with its general equitable powers upon these generally sound propositions: that when a wife remarries, her right to receive alimony under the divorce decree from her former husband should terminate,[8] and that an annulment of the subsequent marriage should not automatically restore the alimony under the prior decree. Notwithstanding the foregoing, the court may exercise its sound discretion in ordering reinstatement of the alimony in the prior decree if, upon its consideration of all of the circumstances, it appears clearly and persuasively that that is necessary to rectify serious inequity or injustice. In the instant case, the trial court made no such finding, but made an affirmative finding to the contrary: that there were no such special circumstances which would justify the reinstatement of the alimony payment obligations under the decree.

■ In regard to the defendant's cross-appeal: the gravamen thereof is that, though the court denied the plaintiff the major relief sought, he awarded her an increase in the child support and in attorney's fees in excess of that requested in her pleadings. Except in cases of default judgments, the prayer for relief does not necessarily limit recovery,[9] but the courts have the authority and should grant the relief to which the proof shows the party is entitled.[10]

In accordance with what has been said herein, the decision of the trial court is affirmed. No costs awarded.

MAUGHAN and WILKINS, JJ., concur.

ELLETT, Chief Justice (dissenting):

I respectfully dissent. When a marriage is annulled, there is no marriage and never has been one. It has been void from the beginning, and the status of the plaintiff in this case is the same now as it was prior to her purported second marriage.

The provisions of Section 30–1–17.2, U.C.A.1953, set out in the main opinion, have no application whatsoever to this case. There was no property accumulated; no children born or to be born; and no genuine need arising from economic change of circumstances due to the annulled marriage. No order pursuant to the above cited statute was made or could have been made by the court which granted the annulment.

The main opinion puts the burden on the woman to show that she still needs alimony. I think the *prior* decree gives her the alimony until it is terminated by a lawful marriage or by an order based on a change of circumstances which the defendant has the burden of showing. Since he has not shown a material change of circumstances which would justify the elimination of alimony, he should not be relieved from the conditions imposed upon him by the original decree.

The trial court made the following findings of fact:

---

8. 45 A.L.R.3d 1033; *Austad v. Austad,* 2 Utah 2d 49, 269 P.2d 284 (1954).

9. 61 Am.Jur.2d Pleading Section 123; *Federici v. Lehman,* 230 Or. 70, 368 P.2d 611 (1962).

10. U.R.C.P. 54(c); *Midwest Supply, Inc. v. Waters,* 89 Nev. 210, 510 P.2d 876 (1973); *Baldeviso v. Thompson,* 54 Haw. 125, 504 P.2d 1217 (1972); *England v. Valley Nat. Bank,* 94 Ariz. 267, 383 P.2d 183 (1963).

2. At the time of the entry of said Decree of (the original) Divorce, the monthly living expenses of the plaintiff and the minor children of the parties were $360 per month.

3. Within a year thereafter, plaintiff was required to purchase a house to make a home for herself and the minor children of the parties because the owner of the house in which they were living as tenants at the time of the divorce would not renew the lease due to the divorce.

4. Also within a year after the entry of the Decree of Divorce plaintiff obtained employment as a secretary with Granite School District where she has been employed since that time. It was contemplated at the time of the divorce that plaintiff would be required to seek employment.

5. Plaintiff's current monthly expenses total $1,002.99. Not included in said amount are the cost of a new automobile, or payments thereon, or the cost of a new roof, or payments thereon, both of which expenses plaintiff will incur in the immediate future.

6. Plaintiff's average net spendable monthly income at the present time and in the foreseeable future from her employment is $561.18, not including an anticipated refund of federal income taxes withheld of about $600.

7. There has been a substantial and material change in the circumstances of the plaintiff and the minor children of the parties since the entry of the Decree of Divorce.

8. The defendant's disposable net income is adequate for the payment of such increases of alimony and support money as are reasonable in view of the change in the needs of the plaintiff and the minor children of the parties, as determined by that certain Order made and entered herein on January 8, 1976.

Even if the main opinion should be considered to be the law of this state, the findings of the trial court would require an increase in alimony, not the elimination of it, if equity is applied to the findings made.

I would reverse the trial court as to the elimination of alimony and would otherwise affirm the judgment. I would award costs to the appellant.

HALL, Justice (concurring in the dissent with comment):

The ruling today is contrary to that of this court in *Kent v. Kent,* supra, note 1 of main opinion. It was the holding there that even though a former wife contracted a void ab initio marriage, and after knowledge of its void nature, conceived a child and thereafter obtained an annulment, neither asking for nor obtaining alimony, her right to claim alimony from her former husband was not terminated. In reaching that conclusion the court did not consider the *1971* enactment of Section 30–1–17.2, U.C.A.1953 which is now relied upon as the authority for an award of alimony in annulment proceedings. It also appears that counsel in that case failed to urge its application, and had the court taken into consideration that new statutory enactment and recognized the general equity powers of the trial court it may very well have reached a contrary result.

The Legislature, having seen fit to provide for an award of "support and maintenance of the parties and children," under a decree of annulment, has apparently provided a means whereby a prior spouse may be relieved of any further obligation of alimony. This is the modern view referred to by Professor Homer H. Clark, Jr., in his treatise on the Law of Domestic Relations, p. 458 (1968). The concept of allowing alimony in annulment matters rather than requiring the first spouse to resume the burden is fortified by the language in *Cecil v. Cecil,* supra footnote 2 of main opinion, where the court said

. . . it would be inequitable for her to obtain the right of support from two sources.

A further review of the record reveals that the judgment of the trial court in *Kent v. Kent,* supra, was dated July 20, 1971, some two months after the effective date of said Section 30–1–17.2 which was on *May*

*13, 1971.* The main opinion, the trial judge, and the litigants here overlook the fact that the statute was in full force and effect when *Kent v. Kent,* supra, was before the court.

The fact that the plaintiff here failed to seek or obtain alimony at the time she obtained the annulment was specifically considered by the trial court as bearing upon the burden he deemed she must necessarily bear to show that special circumstances existed that warranted a reinstatement of alimony. Such is error for two reasons. First, *Kent v. Kent,* supra, holds that the right to claim alimony is not terminated by entering into a void marriage, and second, none of the specific conditions for an award of alimony in annulment proceedings were evident, i. e., the parties had not accumulated any property or acquired any obligations, there was no economic change of circumstances due to the marriage, nor were any children born or expected to be born. Plaintiff's inability to qualify for support in the annulment proceedings places her squarely within the holding of *Kent v. Kent,* supra.